Argued and submitted November 5, 1992, decision of Court of Appeals affirmed, in part on other grounds; judgment of circuit court affirmed except for portion of sentence ordering payment of compensatory fine, which is vacated; case remanded to circuit court for resentencing February 19, 1993

STATE OF OREGON,
*Respondent on Review/
Petitioner on Review,*

*v.*

CRAIG MICHAEL BARKLEY,
*Petitioner on Review/
Respondent on Review.*

(CC C88-10-36869; CA A62773;
SC S38781 (Control), S38874)

846 P2d 390

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for petitioner on review/respondent on review Craig Michael Barkley. With her on the petition and response was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent on review/petitioner on review State of Oregon. With him on the response were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GRABER, J.

## GRABER, J.

Defendant was convicted of three counts of sodomy in the first degree, ORS 163.405,[1] and one count of rape in the first degree, ORS 163.375,[2] involving his 10-year-old daughter. The child testified at defendant's trial. Also admitted in evidence during the trial was a videotaped interview of the child made by personnel at Emanuel Hospital's Child Abuse Response and Evaluation Services (C.A.R.E.S.) unit.

On appeal, defendant argued that the trial court erred in admitting the videotaped interview or certain portions of it. Defendant also argued that the trial court erred in admitting live testimony concerning defendant's physical abuse of the child. Finally, he argued that the trial court erred in imposing on him a fine, payable to the child's mother, to compensate her for wages that she lost while she accompanied her daughter to court. The Court of Appeals affirmed defendant's convictions, vacated the portion of the sentence ordering the compensatory fine, and remanded the case to the circuit court for resentencing. *State v. Barkley*, 108 Or App 756, 817 P2d 1328 (1991). Both parties petitioned this court for review, and we allowed both petitions.

We affirm the decision of the Court of Appeals with respect to defendant's convictions for sodomy and rape. We affirm on other grounds the decision of the Court of Appeals as to defendant's sentence and remand the case to the circuit court for resentencing.

Defendant and his wife were married in 1977 and separated four or five years later. They later divorced. During

---

[1] ORS 163.405 provides in part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"* * * * *

"(b) The victim is under twelve years of age[.]"

[2] ORS 163.375 provides in part:

"(1) A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"* * * * *

"(b) The victim is under twelve years of age[.]"

the period of separation and after the divorce, defendant's daughter lived with him at various times.

In September 1988, defendant's daughter, then 10 years old, was referred to the C.A.R.E.S. unit at Emanuel Hospital. A physical examination by a medical doctor revealed genital and anal abnormalities. The doctor then arranged for the child to be interviewed by another member of the C.A.R.E.S. staff, who also is a medical professional. The interview was videotaped. On the basis of the physical examination and the interview, the doctor diagnosed the child as having been sexually abused.

## ADMISSION IN EVIDENCE OF INTERVIEW

At trial, the jury viewed the videotape of the C.A.R.E.S. interview. A portion of it showed the child's description and her demonstration, through the use of anatomically complete dolls, of her father's sexual conduct toward her. Other portions of the tape showed the child playing with marking pens, drawing pictures, complaining about being hungry, expressing anger toward her father, and describing sexual conduct toward her by two other men.

### A.  *Statutory Analysis*

#### 1.  *Videotape as a whole.*

The trial court admitted the videotape pursuant to OEC 803(4), the exception to the hearsay exclusion for out-of-court statements made for purposes of medical diagnosis or treatment.[3] In his first assignment of error on appeal, defendant argued that the trial court erred in admitting *any* part of

---

[3] OEC 801(3) provides:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

OEC 802 provides:

"Hearsay is not admissible except as provided in Rules 801 to 806 or as otherwise provided by law."

OEC 803(4) provides:

"The following are not excluded by Rule 802, even though the declarant is available as a witness:

the videotape, because the child did not make any statements for the purposes contemplated by OEC 803(4), because all her statements exceeded the proper subject matter permitted by that rule, and because the interview took place after the C.A.R.E.S. doctor had already made a diagnosis of the child and therefore was not reasonably pertinent to diagnosis or treatment of the child.

In *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990), this court explained the reasons why a court may admit an out-of-court statement made for the purpose of obtaining a medical diagnosis or treatment: "the patient's desire for proper treatment or diagnosis outweighs any motive to falsify," and "a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription." (Citations and internal quotations omitted.) This court stated that, in order to be admissible under OEC 803(4), an out-of-court statement must meet three requirements:

> "(a) The statement must be 'made for purposes of medical diagnosis or treatment';
>
> "(b) The statement must describe or relate 'medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof';
>
> "(c) The statement must be 'reasonably pertinent to diagnosis or treatment.' " *Id.* at 55.

*See also State v. Jensen*, 313 Or 587, 592-93, 837 P2d 525 (1992) (quoting the three-part test from *State v. Moen, supra*). We examine the videotape in this case to determine whether the trial court properly found that it satisfied those requirements.

Whether a declarant made statements for the purposes of medical diagnosis or treatment must be determined by reference to the circumstances in which those statements were made. *State v. Moen, supra*, 309 Or at 55-56. When the C.A.R.E.S. doctor had finished the child's physical examination, the following exchange took place:

---

"(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

"[DOCTOR]: [Child,] I'm done with your check-up part.

"[CHILD]: Okay.

"[DOCTOR]: Okay, and you had a good check-up. I can see the places — you know how you told me that you got touched by somebody —

"[CHILD]: Uh huh.

"[DOCTOR]: I can see the places where you got touched but they are healing up really well. And, [the interviewer] needs to talk to you a little bit more about that touching that happened.

"[CHILD]: Uh huh.

"[DOCTOR]: Because we need to find out as much as we can about it so that we know how to make sure that you are safe and if you need any treatment, any medicine or anything.

"[CHILD]: Oh gosh, I had that when I had my cut.

"[DOCTOR]: You did? You had some medicine?

"[CHILD]: Yeah. My pills were about — long, you know how capsules are.

"[DOCTOR]: Yeah.

"[CHILD]: I had one of those and it tasted horrible.

"[DOCTOR]: Okay. Well, if you need any medicine we will try not to give you anything that tastes horrible. So, I'll see you in a little while.

"[CHILD]: Yeah, I had strawberry and grape when I had seizures.

"[DOCTOR]: Oh, you did?

"[CHILD]: Yep, I had seizures.

"[DOCTOR]: Oh, you did?

"[CHILD]: I had strawberry and grape. And, grape was the best.

"[DOCTOR]: It was the best huh? Now, it's really important to tell [the interviewer] the real things that happened to you, okay? Do you know the difference between the truth and a lie?

"[CHILD]: Uh huh.

"[DOCTOR]: Yeah, so we need to know the truth. Okay?

"[CHILD]: Okay.

"[DOCTOR]: We'll see you soon."

■ From that exchange, the trial court properly could conclude that the child knew (a) that the purpose of the interview was to obtain a medical diagnosis or treatment and (b) that she had to be truthful to advance that medical diagnosis or treatment. We conclude that the trial court was entitled to find that the child's statements made during the videotaped interview were "made for purposes of medical diagnosis or treatment." OEC 803(4).

■ Second, the subject matter of most of the child's statements was proper.[4] Using the anatomically complete dolls, she described and demonstrated the history of defendant's sexual conduct toward her. She told the interviewer that what defendant did to her "hurt" — that is, she described physical symptoms resulting from that conduct. Her descriptions of what happened to her informed the interviewer of the cause or source of her complaints. The trial court was entitled to find, therefore, that the videotaped interview as a whole related to the child's "medical history," her "symptoms," and the "cause or external source" of her injury. OEC 803(4). *See State v. Jensen, supra,* 313 Or at 590, 596 (the child's statement that "Daddy dunked me" described cause or source of burns); *State v. Moen, supra,* 309 Or at 57 (the victim's statements about the defendant's presence in her home and his abusive conduct toward her were admissible as descriptions of the "source" of her depression).

■ Finally, most of the child's statements were "reasonably pertinent" to diagnosis or treatment. OEC 803(4). During the pretrial hearing on the admissibility of the videotape, the C.A.R.E.S. doctor who diagnosed the child testified that the interview "confirmed or partially confirmed" the physical evidence of abuse. The doctor also testified that information revealed in such interviews assists C.A.R.E.S. staff in determining appropriate therapy for abused children. The fact that the child's statements also related to the identity of the perpetrator of the abuse does not render them inadmissible.

---

[4] Small portions of the child's statements related to extraneous matters.

In a case involving physical or sexual abuse of a child, information about the identity of the perpetrator may be crucial to treatment — for instance, by suggesting what issues need to be addressed in the psychological therapy provided to the child or by indicating whether the child should be removed from a particular living situation. *See State v. Jensen, supra,* 313 Or at 596-97 (reaching a similar conclusion and citing *State v. Moen, supra,* and cases from other jurisdictions agreeing with it).

The C.A.R.E.S. doctor testified that, in this case, she used the information obtained in the interview in deciding what treatment to recommend for the child: "fairly extensive therapy with a therapist experienced in treating children who had been sexually molested[;] * * * protection from the people that she named as having molested her," including defendant. The trial court was entitled to find that the videotaped interview as a whole was reasonably pertinent to diagnosis or treatment.

We conclude that the record supports the trial court's finding that the requirements for admissibility pursuant to OEC 803(4) were met. *See* OEC 104(1) (preliminary questions concerning admissibility of evidence shall be determined by the court). The trial court did not err in admitting the videotaped interview.

### 2. *Specified portions of videotape.*

Defendant also contends that the trial court erred in admitting "certain portions" of the videotaped interview. The trial court sustained defendant's objections to many portions of the videotape and edited it accordingly. Defendant argues that 11 additional portions of the videotape were inadmissible.[5]

We have considered all of defendant's arguments concerning the 11 additional portions of the videotape but are not persuaded by those arguments. Only two issues require discussion.

---

[5] In his argument related to this assignment of error, defendant also complains that the trial court admitted other statements by the child to which he did not object at trial. We do not consider his unpreserved arguments in relation to those statements.

■ First, the child demonstrated her father's sexual conduct toward her, using anatomically complete dolls. Defendant argues that the demonstration was inadmissible hearsay. The demonstration was a "statement," because it was "[n]onverbal conduct of a person, * * * intended as an assertion." OEC 801(1)(b). That statement was hearsay, because it was made out of court and was offered to prove the truth of the matter asserted. OEC 801(3). As was the videotaped interview as a whole, the demonstration was offered pursuant to OEC 803(4). The demonstration was an integral part of the process of diagnosis and treatment in this case and was admissible for the reasons discussed in relation to the videotape as a whole.

■ Second, on the videotape the child stated that she told a teacher that her father had hit her with a belt and had given her bruises. Defendant argues that the child's recitation of her own prior statement was inadmissible hearsay. Hearsay can include a prior out-of-court statement of the witness who is testifying. Kirkpatrick, Oregon Evidence 483 (2d ed 1989) ("out-of-court statements, even by the witness who is now testifying, are hearsay if offered for their truth"). *See also* Commentary to OEC 801(4)(a) in Kirkpatrick, *supra* at 487-88 (discussing reasons for treating certain prior statements by trial witness as hearsay). In this instance, the self-quoted statement was offered to prove the truth of the matter asserted and was, therefore, hearsay. OEC 801(3).

Any error in admitting that statement was harmless, however, and does not require reversal of defendant's conviction, because there is little likelihood that the error affected the verdict. *See* OEC 103(1) (evidential error not presumed to be prejudicial; error is prejudicial if it affects a substantial right of the party affected).

> " 'Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a "substantial right" of the defendant. OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is "little likelihood that the error affected the verdict." *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987); *see also State v. Miller*, 300 Or 203, 220-22, 709 P2d 225 (1985)[, *cert den* 475 US 1141 (1986)].' *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988).

·"*See also State v. Williams*, 313 Or 19, 56, 828 P2d 1006 (1992) (Unis, J., dissenting) (explaining same); *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991) (describing constitutional basis for Oregon doctrine and contrasting rule under federal constitution)." *State v. Phillips*, 314 Or 460, 471, 840 P2d 666 (1992).

We are persuaded that the child's statement that she told a teacher about being hit had no effect, because the child's extensive live testimony to the same effect (which we discuss below) was admissible. *See State v. Pinnell*, 311 Or 98, 102-09, 806 P2d 110 (1991) (improper references to other, uncharged misconduct during *voir dire* were harmless error, because trial testimony about same acts was admitted without objection).

## B.  *Constitutional Analysis*

■      Defendant next argues that admission of the videotaped interview violated his rights under Article I, section 11, of the Oregon Constitution[6] and under the Sixth Amendment to the Constitution of the United States[7] to confront his accuser, the child. Defendant concedes that the child testified under oath at trial and was subject to cross-examination before the jury, but contends that he "could not confront [the child's] statements or demeanor recorded approximately 8 months before trial." We consider the state constitutional argument first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

"In *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), this court applied the reasoning of *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), to determine 'what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional

---

[6] Article I, section 11, of the Oregon Constitution, provides:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

[7] The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

The Sixth Amendment right to confrontation is made applicable to the states by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Pointer v. Texas*, 380 US 400, 403, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

confrontation clause.' This court explained that test in *State v. Moen*, 309 Or 45, 62, 786 P2d 111 (1990):

> " 'The United States Supreme Court in *Ohio v. Roberts* established a two-part test to determine whether the admission of the out-of-court statements of a person who does not testify at trial satisfies a criminal defendant's right to confrontation under the Sixth Amendment. First, "[i]n the usual case," the declarant must be "unavailable," and second, the out-of-court statements must have "adequate indicia of reliability." 448 US at 65-66. The Court has concluded "that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection' " 448 US at 66. Thus, the "[r]eliability" of the out-of-court statement "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." In cases where the evidence does not fall within a "firmly rooted" hearsay exception, it may be admitted if the proponent can make a "showing of particularized guarantees of trustworthiness." *Id.* ' " *State v. Cornell*, 314 Or 673, 682, 842 P2d 394 (1992) (footnote omitted).

The confrontation concerns addressed by the "unavailability" prong of that test are absent when the declarant whose out-of-court statement is sought to be admitted testifies under oath at trial and is subject to cross-examination, including cross-examination concerning the out-of-court statement,[8] before the finder of fact. *See California v. Green*, 399 US 149, 158, 90 S Ct 1930, 26 L Ed 2d 489 (1970) (a defendant's right to confront accuser under the Sixth Amendment "is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination").[9]

With respect to the "reliability" prong of the *Campbell* test, *State v. Moen, supra*, held: "The hearsay exception

---

[8] *See* OEC 801(4)(a) (certain statements are not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statement).

[9] *See also United States v. Owens*, 484 US 554, 560, 108 S Ct 838, 98 L Ed 2d 951 (1988) (requirements of Sixth Amendment Confrontation Clause are satisfied when hearsay declarant is present at trial, takes an oath, and is subject to cross-examination including about the out-of-court statement, and jury has opportunity to observe witness' demeanor).

expressed in OEC 803(4) is 'firmly rooted.' " 309 Or at 63. Accordingly, out-of-court statements admissible under OEC 803(4) bear adequate indicia of reliability to satisfy Article I, section 11. *Id.* at 62-65.

The declarant in this case, the child, testified under oath as a witness at defendant's trial. Defendant had the opportunity fully and effectively to cross-examine her, both in regard to her in-court statements and in regard to the statements that she made during the videotaped interview. The jury was able to assess the child's demeanor and, hence, her credibility. The hearsay statements in question were properly admitted under a "firmly rooted" hearsay exception and bore adequate indicia of reliability. Defendant's right under Article I, section 11, of the Oregon Constitution, to confront his accuser was not violated by admission of the videotaped interview in these circumstances.

■    We turn to defendant's Sixth Amendment challenge. The Supreme Court of the United States recently has ruled that a hearsay statement made for the purpose of medical diagnosis or treatment may be admitted without violating a defendant's Sixth Amendment right of confrontation, whether or not the declarant is available to testify at trial, because such statements are firmly rooted hearsay exceptions and generically provide substantial guarantees of reliability. *White v. Illinois*, ___ US ___, 112 S Ct 736, 116 L Ed 2d 848 (1992). Under the test announced in *White v. Illinois*, defendant's confrontation rights under the Sixth Amendment to the Constitution of the United States were not violated by the admission of the videotaped interview.

### ADMISSION OF EVIDENCE OF PRIOR PHYSICAL ABUSE

■    Defendant next argues that the trial court erred in denying his motion *in limine* to exclude evidence of his prior acts of physical abuse toward the child. The state offered the evidence pursuant to OEC 404(3);[10] defendant argued that

---

[10] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the evidence was inadmissible "for the reason that the prejudicial effect of such evidence to the defendant outweighs any probative value."[11]

In *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992), this court set out a three-part test that governs the admissibility of "prior acts" evidence under OEC 404(3):

"(1) The evidence must be independently relevant for a noncharacter purpose; (2) the proponent of the evidence must offer sufficient proof that the [acts were] committed and that defendant committed [them]; and (3) the probative value of the [acts] must not be substantially outweighed by the dangers or considerations set forth in OEC 403." (Footnote omitted.)

*See also State v. Johns*, 301 Or 535, 725 P2d 312 (1986) (discussing history of OEC 404(3) and explaining factors trial court considers before admitting evidence under that rule). In addition, when admitting evidence under OEC 404(3), the trial court must "make a record which reflects an exercise of discretion." *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987).

We have applied those requirements to the argument made in the present case and have concluded that they were satisfied. The trial court did not err in denying defendant's motion to exclude evidence of his physical abuse of the child.

## COMPENSATORY FINE
## PAYABLE TO CHILD'S MOTHER

In his last assignment of error, defendant argues that the trial court erred in imposing on him a compensatory fine payable to the child's mother, to compensate her for wages that she lost while she accompanied her daughter to court for the trial of defendant's case. The Court of Appeals held that the child's mother was not a "victim" entitled to payment of a

---

This court has defined "character" in the context of OEC 404(3) as the "disposition or propensity to commit certain crimes, wrongs or acts." *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986).

[11] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

compensatory fine under ORS 137.101, because she "did not suffer direct physical injury when her daughter was raped and sodomized." *State v. Barkley, supra*, 108 Or App at 765. The court vacated that portion of defendant's sentence and remanded the case to the circuit court for resentencing. *Ibid.*

ORS 137.101 provides:

"(1)   Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided on a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims.

"(2)   Compensatory fines may be awarded in addition to restitution awarded under ORS 137.103 to 137.109.

"(3)   Nothing in this section limits or impairs the right of a person injured by a defendant's criminal acts to sue and recover damages from the defendant in a civil action. Evidence that the defendant has paid or been ordered to pay compensatory fines under this section may not be introduced in any civil action arising out of the facts or events which were the basis for the compensatory fine. However, the court in such civil action shall credit any compensatory fine paid by the defendant to a victim against any judgment for punitive damages in favor of the victim in the civil action."

ORS 137.103(4) defines the term "victim" as used in ORS 137.101:

" 'Victim' means any person who[] the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any copartici-pant in the defendant's criminal activities."

■      This court has not previously considered whether, under ORS 137.101, a sentencing court may order payment of a compensatory fine to a parent of a child who was injured by a defendant's criminal activities, where that parent did not suffer a "direct physical injury" as a result of those activities. In deciding that question, our task is to discern the intent of

the legislature. ORS 174.020; *Bartz v. State of Oregon*, 314 Or 353, 357, 839 P2d 217 (1992). We begin with the text and context of the statute. ORS 174.010; *Boone v. Wright*, 314 Or 135, 138, 836 P2d 727 (1992). Related provisions are part of that context. *See Boone v. Wright, supra* (applying that principle).

ORS 137.101, the compensatory fine provision, and ORS 137.103, the definition section for that provision, are silent on the question whether the person or victim "injured" by a defendant's criminal activities must have suffered a "direct physical injury." Because the text and the context of the statute do not make the legislature's intention clear, we turn to the legislative history to aid us. *Bartz v. State of Oregon, supra*, 314 Or at 357.

ORS 137.101 was enacted by the legislature in 1981. Or Laws 1981, ch 637, § 2. The statute was amended to its present form by a voters' initiative in 1986. Or Laws 1987, ch 2, § 11. ORS 137.103, which supplies the definitions for ORS 137.101, was enacted in 1977 as part of a statute providing for "restitution" to victims of crime. ORS 137.103 to 137.109; Or Laws 1977, ch 371, § 1.[12]

ORS 137.103 to 137.109 were enacted in 1977 in response to a decision of this court, *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976), construing a prior restitution provision, ORS 137.540(10) (1975).[13] In *Stalheim*, the defendant was convicted of criminally negligent homicide after the car that he was driving struck an oncoming vehicle, killing two people. The sentencing court placed the defendant on probation and, pursuant to ORS 137.450(10) (1975), ordered that he pay restitution in the amount of $2,500 to the survivor of the persons killed.

---

[12] Minor amendments to ORS 137.103, not relevant here, have been made since 1977.

[13] ORS 137.540(10) (1975) provided:

"The Court shall determine, and may at any time modify, the conditions of probation, which may include, as well as any others, that the probationer shall:

"* * * * *

"(10) Make reparation or restitution to the aggrieved party for the damage or loss caused by the offense, in an amount to be determined by the court."

This court held that, under ORS 137.540(10) (1975),

" 'restitution' [means] the return of a sum of money, an object, or the value of an object which a defendant wrongfully obtained in the course of committing the crime. 'Reparation' * * * encompass[es] only reimbursement for the victim's liquidated or easily measurable damages resulting from the charged offense. This construction would embrace medical expenses, wages actually (not prospectively) lost, and reimbursement for easily measurable property damage.

"The damage valuation problems we have mentioned are particularly severe when the loss is suffered * * * by the deceased victim's family. Moreover, when a defendant is ordered to make reparation to persons other than the direct victim of a crime, the rehabilitative effect of making the offender clearly appreciate the injury caused by his offense would * * * be significantly diluted. Therefore, we construe 'aggrieved party' to refer to the *direct victim of a crime, and not to other persons who suffer loss because of the victim's death or injury*." 275 Or at 687-88 (emphasis added).

As stated, in 1977 the legislature responded to that decision by enacting a separate and detailed restitution statute, ORS 137.103 to 137.109. In a meeting of the House Committee on the Judiciary, Dennis Bromka, Legal Counsel to the Interim Committee on the Judiciary, explained to the committee that the definition of "victim" in House Bill 2012 (codified as ORS 137.103) included "any person who has suffered pecuniary damages" and also included, "but is not limited to, anyone who is legally responsible for the support of one who has suffered pecuniary damages, for example a surviving spouse." Tape Recording, House Committee on the Judiciary, February 21, 1977, Tape 10, Side 2. In a later meeting of the same committee, Bromka discussed a related bill, House Bill 3097, which was eventually tabled and provisions of which were incorporated into House Bill 2012. He explained that "the intention of [the phrase] 'be paid to any person' is that the person who the court determines was damaged by the offense could be the victim, the spouse of the deceased victim, the child of a deceased victim or any person damaged by the act — it's a wide-open definition." The chair of the committee responded that he understood that the language was intended to "obviate" the statutory interpretation made by the Oregon Supreme Court in *State v. Stalheim, supra.* Tape Recording, House Committee on the Judiciary,

April 12, 1977, Tape 29, Side 2. *See also* Minutes, House Committee on the Judiciary, April 29, 1977, p 12 (similar statement of intention).

In a meeting of the Senate Committee on the Judiciary, Edward Sullivan, Legal Counsel to the Governor and Chair of the Governor's Task Force on Corrections, explained that the bill

"was an attempt to reverse the decision of the Supreme Court in [*State v. Stalheim, supra*]. The decision was that only the direct victims of an offense could receive restitution. What this does is allow the victim, the victim's family and injured third parties to collect restitution in a manner which is prescribed either by the court, as a part of the sentence, or by the Parole Board as a condition of parole." Tape Recording, Senate Committee on the Judiciary, May 31, 1977, Tape 40, Side 2.

In a later meeting of that Senate committee, then-Senator Carson asked whether the definition of "victim" in the bill included an "employer who suffered loss." Sullivan responded:

"What we tried to include was not only the direct victim, but the victim's family and also any third party who may have been injured. We tried to keep it as tight as possible while getting every conceivable victim." *Id.*, June 2, 1977, Tape 38, Side 2.

Finally, in the floor debate before passage of House Bill 2012 in the Senate, it was again repeated that the bill was intended to broaden the interpretation of the term "victim" declared by this court in *Stalheim*:

"Given the right factual situation, 'victim' * * * would include not only the person upon whom the assault takes place or the theft is made, but also those who are dependent upon him or her for income or support or whatever it may be. So we broaden the definition of victim." Tape Recording, Senate Floor Debate, June 11, 1977, Tape 40, Side 1.[14]

When ORS 137.101, the compensatory fine provision at issue in this case, was enacted in 1981, it provided in part:

---

[14] The House floor debate did not address specifically the definition of "victim" in the statute. Tape Recording, House Floor Debate, May 19, 1977, Reel 20, Track II.

"Whenever the court imposes a fine as penalty for the commission of an *intentional* crime resulting in *serious physical* injury * * * the court may order that the defendant pay * * * compensatory fines in the case." (Emphasis added.)

Most of the discussion in the relevant committees — the House Committee on the Judiciary and the Senate Committee on Justice — centered around the above-emphasized phrases in the statute. Tape Recording, House Committee on the Judiciary, May 13, 1981, Tape 378, Side A and Tape 377, Side B; Tape Recording, House Committee on the Judiciary, May 19, 1981, Tape 398, Side B; Tape Recording, Senate Committee on Justice, July 9, 1981, Tape 276, Side A. The floor debates contained nothing pertinent to the question presented in this case.

In sum, in enacting ORS 137.101, the 1981 legislature neither confirmed nor disavowed the broad interpretation of the term "victim" adopted in 1977 in relation to ORS 137.103(4).[15] The requirements of *"intentional"* crime and of *"serious physical"* injury were deleted in the 1986 ballot measure amendments to ORS 137.101. Or Laws 1987, ch 2, § 11.

From the foregoing history, we conclude that ORS 137.101 does not require that the person or victim "injured" as a result of a defendant's criminal activities must have suffered a "direct physical injury" thereby. The legislative history establishes the legislative intent to allow a sentencing court to order a defendant to pay a compensatory fine to the parent of a child against whom the defendant's criminal conduct was directed.

However, two other hurdles remain to be cleared before a sentencing court orders a compensatory fine in a

---

[15] In giving examples of situations in which ORS 137.101 would apply, the sponsor of the bill cited situations in which a defendant convicted of homicide was ordered to pay the medical bills of the decedent; in which defendants convicted of assault were ordered to pay their victims for medical expenses, loss of earnings, and out-of-pocket expenses; in which defendants convicted of sexual abuse were ordered to pay their victims for medical expenses and loss of earnings; and in which defendants convicted of negligent vehicular homicide were ordered to pay the medical expenses of the surviving victims, but not loss of earnings resulting from the death of the person killed. House Committee on the Judiciary, Subcommittee 1, March 11, 1981, Exhibit A.

particular case. As we noted at the beginning of this discussion, "victim" is defined in ORS 137.103(4) as "any person who[] the court determines has suffered pecuniary damages." Those damages are defined as

"all special damages * * * which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling." ORS 137.103(2).

Similarly, ORS 137.101(1) limits the imposition of a compensatory fine to a situation in which "the person injured by the act constituting the crime has a remedy by civil action."

In this case, the compensatory fine that the sentencing court ordered defendant to pay was intended to compensate the victim's mother for wages that she lost while she accompanied her daughter to court. That loss was a form of special damages resulting from defendant's criminal activities; the compensatory fine was statutorily permissible in that respect.

The remaining question, which is dispositive of this case, is whether those damages were recoverable against the defendant in a civil action. ORS 137.101(1); ORS 137.103(2); see State v. Dillon, 292 Or 172, 182-83, 637 P2d 602 (1981) (applying that analysis to an award of restitution under ORS 137.103 and 137.106); see also State v. Lefthandbull, 306 Or 330, 758 P2d 343 (1988) (reviewing award of restitution pursuant to ORS 137.106 in light of definitional terms in ORS 137.103; restitution order reversed).

Here, under the facts that the record discloses, we are aware of no theory of civil liability under which the child's mother could recover her lost wages from defendant. Therefore, one statutory criterion was not met, and the order directing the payment of a compensatory fine to her was not authorized. See State v. Dillon, supra (reaching similar conclusion).

The decision of the Court of Appeals is affirmed, in part on other grounds. The judgment of the circuit court is affirmed except for the portion of the sentence ordering the

payment of a compensatory fine, which is vacated. The case is remanded to the circuit court for resentencing.