Argued and submitted November 3, 2000, decision of Court of Appeals affirmed; judgment of circuit court reversed and case remanded to circuit court for further proceedings July 11, 2002

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## ROBERT MOORE, III,
*Respondent on Review.*

(CC 9612-49561; CA A96947; SC S46609)

49 P3d 785

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the briefs was David E. Groom, State Public Defender.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

DURHAM, J.

** Van Hoomissen, J., retired on December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## DURHAM, J.

A Multnomah County jury convicted defendant of assault in the fourth degree, ORS 163.160,[1] and three counts of recklessly endangering another person, ORS 163.195.[2] Defendant appealed, arguing that the trial court's decision to admit hearsay statements made by a witness who did not testify at trial violated defendant's right to "meet the witnesses face to face" under Article I, section 11, of the Oregon Constitution,[3] and his right "to be confronted with the witnesses against him" under the Sixth Amendment to the United States Constitution.[4] Reviewing the case en banc the Court of Appeals reversed, holding that, under this court's case law, the hearsay evidence was inadmissible because the state had failed to produce the declarant or demonstrate that she was unavailable to testify. *State v. Moore*, 159 Or App 144, 150-51, 978 P2d 395 (1999).

---

[1] ORS 163.160 provides, in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon."

[2] ORS 163.195 provides, in part:

"(1) A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

[3] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; *to meet the witnesses face to face,* and to have compulsory process for obtaining witnesses in his favor * * *."

(Emphasis added.)

[4] The Sixth Amendment provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him*; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

(Emphasis added.)

The state petitioned for review. The state concedes that the Court of Appeals correctly applied this court's existing case law under Article I, section 11, but asks this court to reexamine and discard the "unavailability" requirement in that precedent in light of recent United States Supreme Court decisions and other policy arguments. Because the state has not demonstrated that this court's previous decisions incorrectly interpret Oregon constitutional law, we decline to abandon the unavailability rule described in those decisions. Accordingly, we affirm the decision of the Court of Appeals.

The record discloses the following facts. On Christmas Day 1996, defendant, his fiancée, Olea, their daughter, and defendant's daughter from a previous marriage traveled from Tualatin to Gresham to visit defendant's ex-wife. Olea drove the car, and defendant, who had been drinking, rode in the back seat with the children. Defendant and Olea were arguing.

What happened next is the factual issue in the case. Olea did not testify at trial. The only direct testimony from an eyewitness was defendant's testimony. According to defendant, Olea pulled into a convenience store parking lot, and defendant tried to grab the car keys. Defendant testified that he accidentally hit Olea in the face with his elbow. Olea then jumped out of the moving vehicle. Defendant tried to climb into the front seat to stop the vehicle, and the vehicle came to rest in a landscaped island in the parking lot. A man pulled defendant from the vehicle, and two men held defendant to the ground until the police arrived.

The state alleged that defendant had assaulted Olea while she was driving, thus endangering the passengers in the car. Three witnesses testified in court for the prosecution. As noted, Olea was not one of them. Deborah Narro stated that Olea ran into the store, crying, shaking, and shouting, "He's taking my kids, and he's been drinking." Olea had a red mark on her face, Ms. Narro testified. Jose Narro described the same incident and observations. Mr. Narro testified that he approached defendant as defendant stepped out of the car. According to Mr. Narro, defendant tried to hit him, and Mr. Narro and another man pinned defendant to the ground

until Officer Hucke of the Gresham Police Department arrived.

Officer Hucke testified that, when he arrived at the scene, defendant was intoxicated. Hucke placed defendant in his patrol car and interviewed Olea inside the store. He noted that Olea was "extremely distraught" and that there was a red mark on her face near her eye. Hucke also testified that Olea told him that she had been driving when she was struck with a Christmas package and that, at some point, she also had been punched.

At the pretrial hearing on his motion *in limine*, and again at trial, defendant objected to admission of Olea's hearsay statements, arguing that (1) at least some of the statements did not qualify for admission under OEC 803(2)[5] (the excited utterance exception to the hearsay rule); and (2) admission of the hearsay evidence would violate defendant's right to confrontation under the state and federal constitutions because the state had not produced the witness or demonstrated that she was unavailable to testify. The state conceded that it had not attempted to establish that Olea was unavailable, but argued that it did not need to make that showing. The trial court agreed with the state and admitted the statements under OEC 803(2).

Defendant appealed, raising the same arguments. Because the constitutional issue disposed of all the disputed hearsay statements, the Court of Appeals began with that issue. *State v. Moore*, 159 Or App at 147-48. The majority concluded that this court's case law—specifically *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985), and *State v. Kitzman*, 323 Or 589, 920 P2d 134 (1996)—required the state to demonstrate the witness's unavailability. *Id.* at 150. Because the state had failed to show that Olea was not available to testify at trial, the Court of Appeals held that the trial court had erred in admitting the hearsay statements. *Id.* at

---

[5] OEC 803 provides, in part:

"The following are not excluded by ORS 40.455 [the hearsay rule] even though the declarant is available as a witness:

"* * * * *

"(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

150-51. Two judges dissented, arguing that the Court of Appeals was not bound by *Campbell* and its progeny because *Campbell* was based on an incorrect interpretation of federal law. *Id.* at 151. We allowed the state's petition for review to address the unavailability requirement discussed in *Campbell*.

*Campbell* concerned the admissibility of hearsay statements reported by the mother of a three-year-old declarant who was the alleged victim of sexual abuse. 299 Or at 635. The trial court allowed the mother to repeat statements that her daughter had made regarding the alleged abuse and admitted the statements under OEC 803(24), the residual hearsay exception. The child did not testify, and the state did not demonstrate that the child was unavailable to testify. Although this court held that some of the statements were admissible under OEC 803(18a), the exception for complaints of sexual misconduct, the court reversed, stating:

> "[B]efore any out-of-court declaration of any available living witness may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court to satisfy either Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution."

*Id.* at 652 (footnote omitted).

The court reached that result under Article I, section 11, on "independent and separate state grounds." *Id.* at 648. However, the court applied the two-part test that the United States Supreme Court had enunciated in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). 299 Or at 648. In *Ohio v. Roberts*, the Supreme Court stated:

> "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformity with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case * * *, the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. * * *

"The second aspect operates once a witness is shown to be unavailable. * * * [T]he Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' * * *

"The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' * * *

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

*Id.* at 65-66 (citations and footnotes omitted). In *Campbell*, this court "adopt[ed] the reasoning of the Supreme Court of the United States in determining what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause." 299 Or at 648.[6] Applying that two-part test in *Campbell*, the court concluded that the state had violated the defendant's right to meet the witness face to face because the state had not demonstrated that the declarant was unavailable or incompetent to testify. *Id.* at 651-52.

Since *Campbell*, this court has continued to apply that two-part test when a defendant alleges that the admission of hearsay violates his or her right to meet a witness face to face under Article I, section 11. *See State v. Kitzman*, 323 Or at 602-05 (exception for complaints of sexual misconduct; holding that defendant had right to confront witnesses at pretrial availability hearing); *State v. Wilson*, 323 Or 498, 514, 918 P2d 826 (1996) (penal interest exception; declarant

---

[6] Although Article I, section 11, of the Oregon Constitution, does not use the term "confront," we refer to the "right to meet the witnesses face to face" as a "confrontation right" and describe the provision as a "confrontation clause."

unavailable because declarant asserted constitutional right not to testify against himself); *State v. Nielsen*, 316 Or 611, 622-24, 853 P2d 256 (1993) (penal interest exception; finding declarant unavailable because state had demonstrated good-faith but unsuccessful effort to obtain declarant's testimony); *State v. Barkley*, 315 Or 420, 429-31, 846 P2d 390 (1993) (exception for statements made for purposes of medical diagnosis or treatment; " 'unavailability' prong" of test was not barrier to admission of evidence, because declarant had testified at trial, under oath, subject to cross-examination); *State v. Cornell*, 314 Or 673, 682, 842 P2d 394 (1992) (exception for coconspirator statements; coconspirator was unavailable because he had asserted his right not to testify against himself); *State v. Stevens*, 311 Or 119, 138-42, 806 P2d 92 (1991) (exceptions for complaints of sexual misconduct and statements made for purposes of medical diagnosis or treatment; record supported court's finding that declarants were incompetent to testify and that state had made good faith effort to obtain declarants' testimony); *State v. Moen*, 309 Or 45, 62, 786 P2d 111 (1990) (exceptions for statements made for purposes of medical treatment and excited utterance; declarant was unavailable because she was murder victim). The evidentiary rules that applied in *Barkley*, *Cornell*, *Stevens* (medical treatment exception), and *Moen* did not require the declarant to be unavailable to render the hearsay admissible. This court, however, still required the state to demonstrate unavailability, consistent with the two-part test described in *Campbell*.

After *Roberts*, the United States Supreme Court modified its Confrontation Clause analysis. In *United States v. Inadi*, 475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986), the Court held that the Sixth Amendment did not require the government to show that a nontestifying coconspirator was unavailable before the court could admit the coconspirator's out-of-court statements. The Court stated that *Roberts* had not established a general Confrontation Clause test and limited the unavailability rule described in *Roberts* to the hearsay exception applicable in that case—the exception for admission of prior testimony. *Id.* at 392-94.

Six years later, in *White v. Illinois*, 502 US 346, 112 S Ct 736, 116 L Ed 2d 848 (1992), the United States Supreme

Court held that the prosecution need not produce or demonstrate the unavailability of a declarant whose statements are admissible under the spontaneous declaration and medical examination exceptions to the hearsay rule. The Court explained that:

> "[In *Roberts*], we used language that might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or be found unavailable before his out-of-court statement may be admitted into evidence. However, we think such an expansive reading of the Clause is negated by our subsequent decision in *Inadi* * * *."

*Id.* at 353. "[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule," the Court concluded, "the Confrontation Clause is satisfied." *Id.* at 356.

This court has noted the United States Supreme Court's departure from *Roberts*, but has continued to apply the two-part test from *Roberts* to its analysis of confrontation issues under Article I, section 11. *See, e.g., Barkley*, 315 Or at 429-31 (examining availability of declarant in course of Article I, section 11, analysis, but noting that, under *White*, Sixth Amendment does not require unavailability); *Cornell*, 314 Or at 682, 682 n 15 (noting that, under Sixth Amendment, state need not demonstrate unavailability before introducing coconspirator statements, but examining unavailability under Article I, section 11).

This court ordinarily determines whether it can resolve a case on a subconstitutional basis before undertaking any constitutional analysis. *See Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998) (stating that court considers subconstitutional bases for decision before addressing constitutional issues). In this case, however, defendant concedes that some of the hearsay testimony would be admissible under OEC 803(2), if not for the confrontation problem. We agree and, therefore, proceed to consider the state constitutional issue. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (stating that court analyzes state constitutional claims before considering federal constitutional claims).[7]

---

[7] Because we decide this case on state constitutional grounds, we do not reach defendant's Sixth Amendment argument.

In *Campbell*, this court held that Article I, section 11, requires the state to produce available witnesses before the state may use the witnesses' out-of-court statements in a criminal proceeding. This court adopted the United States Supreme Court's reasoning regarding the purposes and values protected by the confrontation right, as reflected in the United States Supreme Court's Confrontation Clause case law up to that point. "[O]n independent and separate state grounds," this court implicitly concluded that Article I, section 11, reflected those same purposes and values. *Campbell*, 299 Or at 648. Consequently, this court applied the same two-part test—including the unavailability requirement—that the United States Supreme Court applied in *Roberts*.

The state acknowledges that this court's interpretation of Article I, section 11, does not change simply because the United States Supreme Court has modified its interpretation of a corresponding provision of the federal constitution. *See State v. Caraher*, 293 Or 741, 749, 653 P2d 942 (1982) ("When this court gives Oregon law an interpretation corresponding to a federal opinion, our decision remains the Oregon law even when federal doctrine later changes."). Instead, the state argues that the court should align the Oregon rule with the federal rule because there are no reasons unique to Oregon for departing from the federal interpretation, and the federal rule, in the state's view, is preferable from a policy standpoint because it focuses on the reliability of trial evidence.

This court has stated that it remains "willing to reconsider a previous ruling under the Oregon Constitution whenever a party presents to us a principled argument suggesting that, in an earlier decision, this court wrongly considered or wrongly decided the issue in question." *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 54, 11 P3d 228 (2000). More specifically, the court will entertain arguments "that either present new information as to the meaning of the constitutional provision at issue or that demonstrate some failure on the part of this court at the time of the earlier decision to follow its usual paradigm for considering and construing the meaning of the provision in question." *Id.* In this case, the state asserts that the court wrongly considered the issue because the court did not independently examine the text, context, or

history of the Oregon provision when it adopted the unavailability rule and that the court wrongly decided the issue because the current federal rule is the "better" rule.

We are not persuaded that this court's analysis and conclusion in *Campbell* is flawed for the reasons that the state asserts. In considering the state's claims, we bear in mind this court's methodology for constitutional interpretation. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (explaining that interpretation of original constitutional provision requires examination of wording of provision, historical circumstances that led to its creation, and case law concerning provision).

First, the court in *Campbell*, in discussing *Roberts*, noted that courts do not read the wording of the federal Confrontation Clause literally. *Campbell*, 299 Or at 648. Such a reading would exclude all out-of-court statements made by declarants who are not available at trial, and courts historically have concluded that the framers did not intend that result. *Campbell*, 299 Or at 648. This court applied the same nonliteral interpretation of the text of Article I, section 11, in *Campbell* and in the court's previous Article I, section 11, cases, which we discuss below.

Second, as noted above, the court in *Campbell* implicitly agreed with the United States Supreme Court's evaluation of the historical purposes and values embodied in the confrontation right, which the *Roberts* two-part test protected. In *Roberts*, the United States Supreme Court stated that the confrontation right reflects "the Framers' preference for face-to-face accusation." 448 US at 65. That historical preference undergirds the unavailability requirement that *Campbell* discussed.

This court's cases that preceded *Campbell* demonstrate the same understanding of the purposes of the confrontation right and, particularly, the historical preference for face-to-face confrontation that the United States Supreme Court discussed in *Roberts*. A number of early Oregon cases established that Article I, section 11, did not preclude the state from using all hearsay against a criminal defendant, even though the hearsay declarant did not testify at trial. In each of those cases the declarant was unavailable to testify.

*See, e.g., State v. Casey,* 108 Or 386, 213 P 771 (1923) (declarant deceased); *State v. Von Klein,* 71 Or 159, 142 P 549 (1914) (declarants absent from state); *State v. Meyers,* 59 Or 537, 117 P 818 (1911) (declarant absent from state); *State v. Walton,* 53 Or 557, 99 P 431 (1909) (one declarant deceased, one beyond jurisdiction of court); *State v. Bowker,* 26 Or 309, 38 P 124 (1894) (declarant seriously ill and physically unable to attend trial); *State v. Saunders,* 14 Or 300, 12 P 441 (1886) (declarant deceased), *overruled on other grounds by State v. Marsh,* 260 Or 416, 490 P2d 491 (1971). Given the choice between excluding sufficiently reliable evidence or admitting that evidence despite the defendant's inability to confront the witness, the court chose the latter. Necessity, practicality, and public policy concerns motivated the court's decisions.

In later Oregon cases, this court continued to consider the reliability of proffered hearsay *only* when confrontation, in the classic sense, was impossible. The case law continued to focus on necessity as the justification for admitting hearsay against a criminal defendant, once confrontation became impossible. In *State ex rel Gladden v. Lonergan,* 201 Or 163, 269 P2d 491 (1954), for example, the court stated that the

"essential purpose of confrontation * * * is to secure for the accused the opportunity of cross-examination. However, it is recognized that there is a secondary advantage to be gained by the personal appearance of the witness before the court and jury where his testimony is orally given. This advantage is stated by Professor Wigmore as follows: 'the *judge* and the *jury* are enabled to obtain the elusive and incommunicable evidence of a *witness' deportment while testifying,* and a certain subjective, moral effect is produced upon the witness.' 5 Wigmore, Evidence 3d ed 125, § 1395.

"In 5 Wigmore, Evidence 3d ed 127, § 1396, the authors states:

" '* * * [T]he secondary advantage * * * *is an advantage to be insisted upon whenever it can be had.* No one has doubted that it is highly desirable, *if only it is available.* But it is merely desirable. *Where it cannot be obtained, the requirement ceases.* * * *' "

*Id.* at 173-74 (all emphasis, except last, added by *Lonergan* court; last emphasis in original).

In *State v. Smyth*, 286 Or 293, 593 P2d 1166 (1979), the court explained:

> "In our system a defendant is not tried on a dossier compiled in prior hearings, no matter how fairly and judiciously conducted. His guilt must be established at the trial by evidence that convinces a factfinder beyond a reasonable doubt. * * * As the United States Supreme Court stated in *Barber* [*v. Page*, 390 US 719, 725, 88 S Ct 1318, 20 L Ed 2d 255 (1968)], '[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.' "

*Id.* at 300. To satisfy the confrontation right, the court stated, the hearsay exception for prior testimony must be read "to refer to circumstances of genuine necessity." *Id.* at 301; *see also State v. Herrera*, 286 Or 349, 355, 594 P2d 823 (1979) ("Before a prosecutor can use prior recorded testimony and thus deprive a defendant of his right at trial to confront his accusers face to face, he must first show the trial court that use of the former testimony is a genuine necessity.").[8]

■ The unavailability requirement described in *Campbell* flows logically from those cases. We conclude from the foregoing that the state has not shown that this court's conclusion in *Campbell* regarding Article I, section 11, is flawed because the court insufficiently considered or misread the text, history, and case law regarding that provision. After reconsidering *Campbell*, we decline to abandon the unavailability rule described in that case. The United States Supreme Court's subsequent shift in its interpretation of the federal Confrontation Clause and the state's policy arguments do not convince us that this court "wrongly considered or wrongly decided" the unavailability issue in *Campbell*. *Stranahan*, 331 Or at 54. Accordingly, we reaffirm the unavailability requirement and the methodology articulated in

---

[8] Although most of the relevant case law concerns hearsay exceptions, particularly prior testimony and dying declarations, that traditionally have applied only when the declarant is unavailable, the cases clearly discuss unavailability as a constitutional requirement, not an evidentiary requirement.

*Campbell* and subsequent cases. Before the state may introduce into evidence a witness's out-of-court declarations against a criminal defendant, the state must produce the witness at trial or demonstrate that the witness is unavailable to testify.

■       In this case, the state conceded that it had not made a good-faith effort to produce the witness at trial or to demonstrate that the witness was not available to testify. Given that concession, the trial court erred in admitting the excited utterance hearsay statements against defendant.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.