Submitted on remand from the Oregon Supreme Court March 31, affirmed
May 15, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# HEATH HOOVER JACKSON,
*Respondent.*

## C991444CR; A109766

69 P3d 722

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Laura S. Anderson, Assistant Attorney General, for appellant.

Erin Galli, Michael M. Watkins, and Watkins & Bass for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

This case is before us on remand from the Oregon Supreme Court. *State v. Jackson*, 335 Or 90, 58 P3d 821 (2002). We originally reversed the trial court's pretrial ruling granting defendant's motion *in limine* to exclude hearsay that the state sought to admit into evidence under the "excited utterances" exception to the hearsay rule.[1] *State v. Jackson*, 175 Or App 288, 27 P3d 166 (2001) (per curiam opinion citing *State v. Rumary*, 173 Or App 219, 21 P3d 166 (2001)).[2] We concluded that admitting the hearsay would not violate defendant's confrontation rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution because, even though the state did not intend to call the hearsay declarant as a witness, she was present at trial and available to testify. The Supreme Court vacated our decision and remanded the case for our further reconsideration in light of its opinion in *State v. Moore*, 334 Or 328, 49 P3d 785 (2002). We now affirm the trial court's ruling excluding the hearsay evidence.

The question before us is whether Article I, section 11, or the Sixth Amendment is violated by the admission into evidence of a hearsay declaration against a criminal defendant when the declarant is available to testify but does not do so. We review constitutional issues for errors of law. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999). We consider the state constitutional question first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

---

[1] OEC 803 provides, in part:

"The following are not excluded by ORS 40.455, even though the declarant is available as a witness:

"* * * * *

"(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

As we explain below, in criminal cases, the Confrontation Clause requires that the declarant either be unavailable or actually testify in court.

[2] The material facts in *Rumary* and in this case are indistinguishable. The defendant in *Rumary* did not seek review in the Supreme Court. *See also State v. Crain*, 182 Or App 446, 50 P3d 1206 (2002) (also applying *Rumary* analysis to materially indistinguishable facts).

Article I, section 11, provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *." In *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), the Supreme Court observed that a literal reading of Article I, section 11, would require "the exclusion of any out-of-court statement made by a declarant not available at trial * * *." It further stated that courts have concluded historically that the framers did not intend that result. *Id.* The court adopted the "two-part test for determining whether admission of out-of-court statements of a witness who does not testify at trial satisfies the defendant's right to confrontation" that was described in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). *Campbell*, 299 Or at 648. Under that test, "the declarant must be unavailable and * * * the declarant's out-of-court statements must have 'adequate indicia of reliability.' " *Id.* Hearsay testimony is not admissible if it fails to meet both of those requirements. *Id.*[3]

In *State v. Barkley*, 315 Or 420, 430, 846 P2d 390, *cert den*, 510 US 837 (1993), the Oregon Supreme Court held, "The confrontation concerns addressed by the 'unavailability' prong of [the *Campbell*] test are absent when the declarant whose out-of-court statement is sought to be admitted testifies under oath at trial and is subject to cross-examination * * *." We concluded in *Rumary* that *Barkley* was controlling because, as in *Barkley*, the hearsay declarant in *Rumary* was available to testify at trial. We reasoned that, although the

---

[3] In *United States v. Inadi*, 475 US 387, 392-94, 106 S Ct 1121, 89 L Ed 2d 390 (1986), the Court stated that *Roberts* had not established a general Confrontation Clause test and limited the unavailability rule described in *Roberts* to the hearsay exception applicable in that case—the exception for admission of prior testimony. In *White v. Illinois*, 502 US 346, 353, 112 S Ct 736, 116 L Ed 2d 848 (1992), the Court explained:

"[In *Roberts*], we used language that might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or be found unavailable before his out-of-court statement may be admitted into evidence. However, we think such an expansive reading of the Clause is negated by our subsequent decision in *Inadi* * * *."

The Oregon Supreme Court has noted the United States Supreme Court's departure from *Roberts* but nonetheless has continued to apply the two-part test from *Roberts* to its analysis of confrontation issues under Article I, section 11. *See, e.g.*, *State v. Barkley*, 315 Or 420, 429-31, 846 P2d 390, *cert den*, 510 US 837 (1993) (examining availability of declarant in course of Article I, section 11, analysis but noting that, under *White*, Sixth Amendment does not require unavailability).

state did not intend to call her as a witness, she was not unavailable for confrontation purposes because her presence in court would have afforded the defendant the opportunity to cross-examine her. *Rumary*, 173 Or App at 223. Thus, we concluded that "the concerns underlying the 'unavailability' prong" were inapposite. *Id.* at 224. As discussed, our original decision in this case followed our reasoning in *Rumary*.

After our original decision in this case, the Supreme Court decided *Moore*. In *Moore*, the state offered hearsay testimony into evidence without showing that the declarant, who was not present at trial, was unavailable. 334 Or at 330. The trial court admitted the evidence, and we reversed. *State v. Moore*, 159 Or App 144, 978 P2d 395 (1999). In affirming our decision, the Supreme Court cited a number of early Oregon cases in which the state was permitted to use hearsay evidence against a criminal defendant without calling the declarant as a witness. *Moore*, 334 Or at 338. The court noted that "[i]n each of those cases the declarant was unavailable to testify." *Id.* The court stated that, in later decisions, it had proceeded to the second prong of the *Campbell* test "to consider the reliability of proffered hearsay *only* when confrontation, in the classic sense, was impossible." *Moore*, 334 Or at 339 (citations omitted; emphasis in original). Rejecting the state's request that it renounce the unavailability requirement articulated in *Campbell*, the court held:

> "[W]e reaffirm the unavailability requirement and the methodology articulated in *Campbell* and subsequent cases. Before the state may introduce into evidence a witness's out-of-court declarations against a criminal defendant, *the state must produce the witness at trial* or demonstrate that the witness is unavailable to testify."

*Moore*, 334 Or at 340-41 (emphasis added).

The meaning of "unavailability" is clarified by reference to the underlying purpose of confrontation, which is "to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence * * *." *Roberts*, 448 US at 65. When a witness for the state testifies before the trier of fact, accuracy is promoted in three ways.

"Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."

*California v. Green*, 399 US 149, 158, 90 S Ct 1930, 26 L Ed 2d 489 (1970) (quoting John Henry Wigmore, 5 *Evidence* § 1367, 29 (3d ed 1940)) (footnote omitted); *see also Moore*, 334 Or at 339 (citing *State ex rel. Gladden v. Lonergan*, 201 Or 163, 173-74, 269 P2d 491 (1954)). The unavailability requirement effectuates the preference for face-to-face confrontation by "establish[ing] a rule of necessity." *Roberts*, 448 US at 65. To satisfy that rule, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.* The rule of necessity applies to Article I, section 11; the state must either furnish face-to-face confrontation or show that doing so is impossible. *Moore*, 334 Or at 339.

*Barkley* is not to the contrary. In *Barkley*, the state called the hearsay declarant as a witness, and she was subjected to cross-examination by the defendant. But more than that, under oath and before the jury, she was required to "affirm, deny, or qualify the truth of the prior statement under the penalty of perjury[.]" *Green*, 399 US at 159. Moreover, the Supreme Court required that the hearsay portion of her testimony satisfy one of the "firmly-rooted" hearsay exceptions, even though her in-court appearance provided the defendant with the opportunity to conduct cross-examination. *Barkley*, 315 Or at 431. Thus, the accuracy of her hearsay declarations was ensured by the full range of confrontation safeguards.

In *Rumary*, we concluded that, because the declarant was available to testify at trial, the defendant had the opportunity to examine her and, therefore, "the concerns underlying the 'unavailability' prong of the *Campbell* analysis" were inapposite. *Rumary*, 173 Or App at 224. In light of

*Moore*, that conclusion failed to capture the full purposes of confrontation.

■■ There could be any number of reasons why the state might prefer not to call an available declarant as a witness at trial. For example, the state might believe that the declarant would not be a credible witness and that his or her declarations would be more believable to a jury if offered through the testimony of a police officer or other reporting witness. However, such tactical preferences do not, for purposes of the availment of confrontation rights, transform a defendant's *opportunity* for cross-examination into an *obligation* to call the declarant as a witness. Although a defendant may have the opportunity to call the declarant as an adverse witness, two of the safeguards provided by confrontation—sworn testimony and the opportunity for jury assessment of the declarant's demeanor—would be absent if the defendant did not call the declarant to the stand. Because courts excuse the absence of confrontation only in the face of "genuine necessity," *Moore*, 334 Or at 340, when the state can produce the declarant as a witness, it must do so. *Id.* at 341. Put differently, "availability" does not refer to the declarant's physical presence at the courthouse; rather, it refers to the state's ability to produce the declarant as a witness. The burden of producing the declarant does not rest with the defendant. *Id.*; *see also State v. Arellano*, 149 Or App 86, 90, 941 P2d 1089 (1997), *rev dismissed*, 327 Or 555 (1998) ("[T]he proponent of the evidence generally has the burden of establishing the factual prerequisites for admissibility.").

■ Because the trial court in this case determined that the hearsay declarant was present in court and available to testify, confrontation was not impossible. It follows that the state was required to produce the declarant as a witness and that, in the absence of such appearance, admission of her hearsay declarations into evidence would have violated defendant's right to confrontation under Article I, section 11. Therefore, the trial court did not err in granting defendant's motion *in limine*.[4]

Affirmed.

---

[4] Because our decision rests on Article I, section 11, we do not consider whether defendant's Sixth Amendment rights were violated.