Argued and submitted September 6, 2007, decision of Court of Appeals affirmed January 25, 2008

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## MIGUEL ESPINOZA CAMARENA,
aka Miguel Camarenaespinoza,
*Petitioner on Review.*

(CC 030331454; CA A122282; SC S054330)

176 P3d 380

Susan Fair Drake, Senior Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

This is a criminal case involving the Confrontation Clause of the Sixth Amendment to the United States Constitution and its application to statements made by the complainant during a 9-1-1 telephone call. In response to an emergency operator's return call, the complainant indicated that she had just been assaulted by defendant, her live-in boyfriend. Defendant was found guilty of fourth-degree felony assault at a trial in which the complainant's recorded statements from the 9-1-1 call were introduced into evidence. Defendant appealed his conviction to the Court of Appeals, arguing, in part, that use of the recorded 9-1-1 conversation at trial in lieu of the complainant's live testimony violated defendant's Sixth Amendment right to confront the witnesses against him. Drawing on the United States Supreme Court's recent resolution of a similar issue in *Davis v. Washington*, 547 US 813, 126 S Ct 2266, 165 L Ed 2d 224 (2006), the Court of Appeals affirmed defendant's conviction, concluding that the complainant's initial recorded responses to the 9-1-1 operator's questions were nontestimonial and, therefore, did not implicate the Sixth Amendment. *State v. Camarena*, 208 Or App 575, 145 P3d 267 (2006). We allowed defendant's petition for review, and now affirm the Court of Appeals decision.

The relevant facts are undisputed. On the evening of March 13, 2003, an emergency operator serving the Gresham area received a 9-1-1 telephone call. The caller, however, hung up immediately after the operator answered. The operator promptly called the telephone number from which the call had originated and engaged in the following exchange:

"[COMPLAINANT]: Hello.

"[9-1-1]: Hi, this is 9-1-1. Somebody called and hung up. Is there a problem there?

"[COMPLAINANT]: Yeah, my boyfriend hit me but then he left.

"[9-1-1]: Where is he at now?

"[COMPLAINANT]: I don't know. He took the car and he left.

"[9-1-1]:   Okay. What kind of car is it?

"[COMPLAINANT]:   A Honda Accord. A black one.

"[9-1-1]:   Do you know which direction he went?

"[COMPLAINANT]:   I don't know.

"[9-1-1]:   What's your address?

"[COMPLAINANT]:   2700 West Powell.

"[9-1-1]:   Do you need medical attention?

"(no response)

"[9-1-1]:   Where did he hit you at?

"[COMPLAINANT]:   In my eye.

"[9-1-1]:   You need medical to look at you?

"[COMPLAINANT]:   (inaudible) black and blue. No. I have a black eye right now though.

"[9-1-1]:   He's a white guy, a black guy?

"[COMPLAINANT]:   He's Mexican.

"[9-1-1]:   What's his name?

"[COMPLAINANT]:   Miguel Camarena. He's been arrested for it before. He's on probation.

"[9-1-1]:   And he's now on probation for family violence?

"[COMPLAINANT]:   For hitting me, yeah.

"[9-1-1]:   Okay.

"[COMPLAINANT]:   And I don't want him to go to jail . . .

"[9-1-1]:   Okay.

"[COMPLAINANT]:   . . . 'cause (inaudible) 'cause I have two kids and I don't want him to go to jail because he's my only income.

"[9-1-1]:   So in order to get paid, you'd rather have him go ahead and hit you?

"[COMPLAINANT]:   No.

"[9-1-1]: Okay. He needs to go to jail, okay, and you can start looking for some other way to support yourself. Don't, don't fall into this trap, the trap that you can't survive without this guy and that gives him the right to do whatever he wants. That's not true. That's absolutely not true. You do not deserve to be hit."

The complainant then provided the operator with defendant's driver's license number and told the operator that the assault had occurred "[l]ike a minute" before the complainant had called 9-1-1. Throughout her conversation with the operator, the complainant cried intermittently and sounded agitated. The 9-1-1 operator subsequently dispatched a Gresham police officer to the complainant's apartment and the officer documented the complainant's injury with a series of photographs. The complainant then reiterated the events of the evening to the investigating officer.

Five days later, a Gresham police detective conducted two follow-up interviews regarding the reported incident, one with defendant at the couple's apartment and the other with the complainant while she was at work. Defendant subsequently was charged with fourth-degree felony assault.[1]

---

[1] ORS 163.160 provides:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the fourth degree is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"(a) The person has previously been convicted of assaulting the same victim;

"(b) The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230; or

"(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim.

"(4) For the purposes of subsection (3) of this section, an assault is witnessed if the assault is seen or directly perceived in any other manner by the child."

■ Although the state had served the complainant with a subpoena to appear as a witness against defendant, she did not appear at defendant's trial. Defendant then moved to exclude from evidence all the complainant's recorded 9-1-1 statements and the statements that she later had made to police officers. Defendant argued, among other things, that to allow those statements into evidence without defendant having the opportunity to cross-examine the complainant violated defendant's right to confront the witnesses against him under the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution.[2] The trial court disagreed and allowed the state to present the challenged statements to the jury.[3] Ultimately, defendant was convicted of fourth-degree felony assault.

On appeal, defendant contended again that, as a result of the complainant's absence at trial, the evidentiary use of the complainant's statements violated defendant's confrontation rights under both state and federal constitutions.

---

[2] The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

[3] We note that defendant's evidentiary challenges at trial encompassed, among other things, a blanket objection to *any* evidence from the recorded 9-1-1 telephone call, as opposed to a narrower objection to specific parts of that call. Conversations, however, that take place between emergency 9-1-1 operators and those that call them for assistance may often contain both admissible and inadmissible statements for purposes of the Sixth Amendment's Confrontation Clause. *See Davis,* 547 US at 828, 126 S Ct at 2277 (conversation that begins as nontestimonial interrogation to determine need for emergency assistance can become testimonial once operator gains necessary information to address emergency, or the emergency ends). Consequently, we think it is important to remind both bench and bar that, as a matter of Oregon law,

"[i]t is well established that when evidence is offered as a whole and an objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal if any portion of the offered evidence was properly admissible, despite the fact that other portions would not have been admissible had proper objections been made to such portions of the offered evidence."

*State v. Brown,* 310 Or 347, 358-59, 800 P2d 259 (1990), quoting *Sproul v. Fossi,* 274 Or 749, 755, 548 P2d 970 (1976) (internal citations omitted).

The Court of Appeals resolved defendant's state constitutional arguments relying on this court's decision in *State v. Cook*, 340 Or 530, 135 P3d 260 (2006). The Court of Appeals concluded that, under *Cook*, the complainant's statements to the 9-1-1 operator constituted "excited utterances," a firmly rooted hearsay exception under Oregon law. That fact, according to the Court of Appeals, imbued the complainant's statements with a particularized guarantee of trustworthiness, allowing them to pass constitutional muster under Article I, section 11. *Camarena*, 208 Or App at 581.

As to defendant's Sixth Amendment arguments, the Court of Appeals relied on *Davis*, a Sixth Amendment confrontation case that involved, in part, statements made to a 9-1-1 operator during an emergency telephone call.[4] In concluding that the statements in *Davis* were "non-testimonial," and therefore did not implicate the Sixth Amendment, the United States Supreme Court established a framework for analyzing statements made in a 9-1-1 context. After soliciting additional briefing on *Davis* from the parties, the Court of Appeals drew heavily on that case to determine whether the complainant's statements were testimonial for Sixth Amendment purposes. According to the Court of Appeals, the question of whether 9-1-1 statements were testimonial involve a "totality of the circumstances" analysis under *Davis*:

> "To reiterate: Under *Davis*, the proper inquiry is whether the totality of the 'circumstances objectively indicat[e] that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency.' [547] US at 822, 126 S Ct at 2273. From the Court's analysis, we understand that several considerations bear on that inquiry. *First*, what is the temporal relationship between the statements and the events described? That is, were the events 'actually happening' as the statements were made, or did the statements recount 'past events' after 'some time' had passed? *Second*, did the exchange between the police and the declarant relate, logically and practically, to the immediate identification of, and response to, an

---

[4] *Davis* is composed of two different Confrontation Clause cases that were consolidated into a single Supreme Court opinion. The case that accompanies *Davis*— *Hammon v. Indiana*, 547 US 813, 126 S Ct 2266, 165 L Ed 2d 224 (2006), involved statements made to law enforcement officers at a crime scene rather than statements made to a 9-1-1 operator.

emergency—as opposed to investigating past criminal conduct and developing information for purposes of possible future prosecution? *Third*, how 'formal' was the questioning? Did the questioning take place in a police station, in an isolated room, or on the phone? Were the declarant's statements 'frantic' or 'deliberate'?"

*Camarena*, 208 Or App at 587 (emphases in original). The Court of Appeals concluded that, by questioning the complainant, the 9-1-1 operator intended to determine only whether an emergency existed and the extent of the complainant's need for assistance as a result of that emergency, particularly medical assistance. *Id.* at 589. Although the Court of Appeals observed that the complainant's intent in answering those questions was unclear, it noted that, under *Davis*, the distinction between testimonial and nontestimonial statements made during a police interrogation turned dispositively on the purpose driving the interrogation:

> "In all events, under *Davis*, as noted, the dispositive distinction between testimonial and nontestimonial statements made in the course of police interrogations is 'the primary purpose *of the interrogation.*' "

*Id.* (emphasis in original; citation omitted).

The Court of Appeals went on to conclude that the complainant's statements to the 9-1-1 operator regarding the complainant's injuries, *i.e.*, that her boyfriend had hit her and, in fact, had struck her in the eye, were nontestimonial and, therefore, the admissibility of those statements were not prohibited by the Sixth Amendment. *Id.* at 590. The court also held that, even if it were to assume that the balance of complainant's statements to the 9-1-1 operator and to the responding police officers were testimonial, those statements were either immaterial or cumulative in light of the complainant's nontestimonial statements; any error in admitting them was, therefore, harmless. *Id.* The Court of Appeals affirmed the trial court's judgment and, as noted, this court allowed review to consider the complainant's statements in light of the Supreme Court's decision in *Davis*.

This court's paradigm on review is first to consider a defendant's statutory claims, if any, followed by a defendant's state constitutional claims and concluding with any federal

constitutional claims a defendant may have. *See Cook*, 340 Or at 536 (describing paradigm). For purposes of this case, we approve without further discussion the Court of Appeals' analysis and conclusion that the statements contained in the 9-1-1 recording were not admitted in violation of Article I, section 11, of the Oregon Constitution.[5] On review, we focus on defendant's Sixth Amendment Confrontation Clause claim because the issue on review is narrow—statements to a 9-1-1 operator—and because the United States Supreme Court has recently decided a case involving this very issue and has announced the appropriate analytical framework for deciding Sixth Amendment confrontation challenges involving statements made to 9-1-1 operators.

On review, defendant begins with a request that this court create a bright-line rule that any statement made to a 9-1-1 operator is the equivalent of a statement made to a police officer. Categorizing such operators must necessarily begin with the statutes that govern their activities. In this state, the legislature has regulated Oregon's emergency telecommunications systems pursuant to ORS 401.706 to 401.816. As part of those provisions, ORS 401.735 defines "emergency telephone workers" using the definition found in ORS 243.736(2), which provides:

> "As used in this section, 'emergency telephone worker' means a person whose official focal duties are receiving information through a 9-1-1 emergency reporting system under ORS 401.710 to 401.816, relaying such information to public or private safety agencies or dispatching emergency equipment or personnel in response to such information."

Because the statute defines 9-1-1 operators as informational conduits for both public *and private* safety agencies, their

---

[5] As previously noted, the Court of Appeals held that, because the statements contained in the 9-1-1 recording were admitted below pursuant to OEC 803(2), the "excited utterance" hearsay exception, the statements did not violate Article I, section 11, of the Oregon Constitution because their reliability had been established by the fact that the statements were admitted under a "firmly rooted" hearsay exception. *Camarena*, 208 Or App at 581.

statutory role extends well beyond law enforcement functions and the law enforcement sector. In our view, the legislature's definition of "emergency telephone worker" effectively prevents this court from categorizing, as a matter of law, all 9-1-1 operators as *de facto* police officers.

We acknowledge, however, that although 9-1-1 operators may not be police officers *per se*, their jobs do, at times, place them in circumstances that require them to act as police agents for law enforcement purposes. After making a similar observation in *Davis*, the Supreme Court considered it appropriate to assume, without deciding, that, for purposes of the case before it, the acts of 9-1-1 operators were indeed acts of police officers. 547 US at 823 n 2, 126 S Ct at 2274 n 2. We find that example instructive, particularly where, as here, the 9-1-1 operator responding to the complainant's call did not dispatch ambulance or fire personnel to the complainant's apartment, but sent, instead, a police officer. As a result, we will assume that the emergency operator in this case acted as a police agent during the operator's telephone conversation with the complainant, and that the complainant's statements to the operator were made, as a practical matter, to a law enforcement officer.

With that established, we take up defendant's argument: *i.e.*, that the complainant's 9-1-1 statements were testimonial under the Sixth Amendment, a position that rejects the Court of Appeals' reading of *Davis v. Washington*. We turn now to *Davis*.

Like this case, *Davis* began with a 9-1-1 telephone call that the caller terminated without speaking to the operator who answered. The emergency operator immediately dialed the caller's number and the female victim answered. In response to the operator's questions, the victim indicated that she was presently being attacked by her boyfriend, the defendant Davis. The operator asked the victim to stay on the line while the operator continued gathering information from her, including, among other things, her attacker's identity. During that exchange, the defendant ceased his assault and fled the crime scene. Police officers arrived shortly thereafter and noted fresh injuries on the victim's forearms and face.

The defendant was subsequently charged with felony violation of a domestic no contact order. However, the victim did not appear at trial to identify the defendant as her assailant. Over the defendant's Sixth Amendment Confrontation Clause objection, the trial court admitted the 9-1-1 recording of the victim's exchange with the emergency operator in order to establish the defendant's role in the attack. The defendant was subsequently convicted of the charges against him.

In affirming the trial court's decision to admit the 9-1-1 recording into evidence, the United States Supreme Court began by identifying the differences that it perceived between testimonial and nontestimonial statements:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Davis*, 547 at 822, 126 S Ct at 2273-74. In a footnote to that holding, the Court elaborated on the nature of interrogations and their relationship to the creation of testimonial or nontestimonial statements. The Court emphasized that the Confrontation Clause ultimately requires decision-makers to consider a declarant's statements as well as an interrogator's questions in assessing Confrontation Clause controversies:

> "Our holding refers to interrogations because, as explained below, the statements in the cases presently before us are the products of interrogations—which in some circumstances tend to generate testimonial responses. This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation. (Part of the evidence against Sir Walter Raleigh was a letter from Lord Cobham that was plainly not the result of sustained questioning. *Raleigh's*

*Case*, 2 How. St. Tr. 1, 27 (1603).) *And of course even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate."*

*Id.* at 822-23 n 1; 2274 n 1 (emphasis added).

Building on that foundation, the Court went on to articulate four factors that led it to conclude that the victim's statements in *Davis* were nontestimonial. The Court concluded that a reasonable listener, evaluating the victim's statements objectively, would conclude that (1) the victim was relating events to the 9-1-1 operator as they actually happened rather than describing past events; (2) the victim faced an ongoing emergency in the form of a bona fide physical threat; (3) the statements that the victim made were necessary to resolve the present emergency, including statements regarding the defendant's identity so that police officers dispatched to the scene would know whether or not they faced a violent felon; and (4) the victim's statements were not made in the safety of a station house or a police officer's presence, but were made "over the phone, in an environment that was not tranquil, or even (as far as any reasonable 9-1-1 operator could make out) safe." *Id.* at 827; 2276-77. The Court concluded that, considered together, those circumstances objectively indicated that the primary purpose behind the victim's 9-1-1 interrogation in *Davis* was to enable authorities to meet an ongoing emergency.

■    Here, after comparing the analytical framework set out in *Davis* with the one used by the Court of Appeals in this case, we agree with the outcome reached by the Court of Appeals, but conclude that although that court arrived at the correct result, it misapplied the *Davis* analysis in doing so. In employing its "totality of the circumstances" approach to examine the 9-1-1 conversation in this case, the Court of Appeals focused almost exclusively on the nature of the questions directed at the complainant by the emergency operator. It held that the statements at issue here were nontestimonial based on its conclusion that the 9-1-1 operator's

"initial inquiries and her questions concerning the nature and extent of [the complainant's] injuries were logically and practically calculated to determine whether an emergency

existed and the nature and extent of [the complainant's] need for immediate assistance."

*Camarena*, 208 Or App at 589. The complainant's responses, however, were largely ignored. That was error. As the Supreme Court made plain in *Davis* and we now reiterate, "it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Davis*, 547 at 823 n 1, 126 S Ct at 2274 n 1. As we read *Davis*, that statement was intended to emphasize that statements made in situations not amounting to "interrogation" may, depending on the circumstances, nevertheless qualify as testimonial, so that their admission would violate the Sixth Amendment if the declarant were not available to testify.

■ That said, however, focusing on the first part of the recorded conversation between the complainant and the 9-1-1 operator, we conclude that an objective examination of those statements requires the same outcome as that reached by the Court of Appeals.[6] As relevant here, those statements established that (1) complainant's boyfriend had hit her and left the couple's apartment; (2) the attack took place only moments before the 9-1-1 operator made contact with the complainant; (3) the complainant had been hit in the eye; and (4) the complainant had provided the 9-1-1 operator with the address where she could be found.

First, although the relevant portions of complainant's 9-1-1 telephone call clearly describe an attack that had passed, the call occurred within one minute of the attack, or just after defendant had left the couple's residence. The temporal proximity of that assault does not match, exactly, that of the attack that took place in *Davis*, but in our view, the scant 60 seconds that separate them is insufficient to suggest that the danger of a renewed assault had fully abated. As the Court of Appeals noted, defendant had just left; he could as easily have returned before the police arrived.

---

[6] In the transcript of the 9-1-1 recording in this case, the statements referred to above are those that begin with the complainant's initial disclosure to the 9-1-1 operator that "my boyfriend hit me but then he left," and continue through her disclosure of defendant's name.

Second, as alluded to above, a reasonable person could infer from the complainant's responses that she faced an ongoing emergency. The complainant was shaken and had sustained an injury to her eye. Defendant's exact whereabouts were unknown when the complainant spoke with the 9-1-1 operator and there was a reasonable likelihood that defendant might immediately return to their apartment, given the extremely short period of time between his exit and the complainant's 9-1-1 telephone call. Third, in light of that possibility, the complainant's identification of her boyfriend as her assailant, as well as her location, were both necessary to help terminate that ongoing emergency. And, fourth, it was reasonable to infer from complainant's statements that the environment from which she was calling would be neither tranquil nor reasonably safe until aid arrived, given the possibility of defendant's return.

■      Under the criteria established by the Supreme Court in *Davis*, we conclude that the complainant's initial 9-1-1 responses, 344 Or at 40 n 6, were nontestimonial and, therefore, not subject to the confrontation requirements of the Sixth Amendment. However, the balance of the complainant's responses were unnecessary to resolve an ongoing emergency. Viewed objectively, the remaining questions and responses were directed at establishing facts only relevant to a subsequent criminal action. The trial court erred in admitting the remainder of the 9-1-1 conversation.

■ ■      Defendant also argues that the subsequent statements made by the complainant to investigating officers following the 9-1-1 telephone call were also testimonial and should not have been admitted at trial in the absence of an opportunity to cross-examine the complainant. As noted earlier, after her assault, the complainant indicated in face-to-face interviews with investigating officers that defendant had struck her in the eye. On appeal, the state conceded that those statements were testimonial, but argued that their inclusion at trial was harmlessly cumulative, given the admissibility of the complainant's recorded 9-1-1 statements. The Court of Appeals reached a similar conclusion. We agree with that assessment. Although the remainder of the complainant's 9-1-1 responses and the complainant's subsequent statements to police officers were testimonial, we conclude

that their admission at trial was harmless. That is so because the 9-1-1 statements that were nontestimonial, and therefore admissible, were of similar content and sufficient to establish the elements of the charge against defendant.

The decision of the Court of Appeals is affirmed.