Argued and submitted on December 10, 2014, Central Catholic High School, reversed and remanded July 20, petition for review allowed November 17, 2016 (360 Or 604) See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH JAMES HARRIS,
aka Kenneth James Harris-Maynard,
aka Kenneth James Maynard,
*Defendant-Appellant.*

Deschutes County Circuit Court
12FE0978; A154977

379 P3d 539

John Paul Evans, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

## DUNCAN, P. J.

Defendant appeals a judgment of conviction for attempted misdemeanor fourth-degree assault, which was based on an incident involving his girlfriend's 16-year-old daughter, E. On appeal, defendant argues that the trial court erred by admitting a recording of E's 9-1-1 call after she failed to appear as a witness on the morning scheduled for trial. According to defendant, the admission of E's out-of-court statements violated his rights under the confrontation clause of Article I, section 11, of the Oregon Constitution, because the state failed to prove that it made a good-faith effort to secure E's trial attendance. We agree with defendant that the state's effort to secure her attendance is insufficient to demonstrate unavailability for purposes of defendant's confrontation rights under Article I, section 11, and we reverse and remand on that basis.

### BACKGROUND

For purposes of this appeal, the background facts are essentially undisputed. In August 2012, police responded to a 9-1-1 call from E, who reported that she was hiding in the bathroom of her home because her "mom's boyfriend," defendant, had hit E, was "waiting to hit [E] with a belt," and was outside the door fighting with her mother, N. The responding officers found E, "hysterical," in the street near the house. They then spoke to defendant, who claimed that the incident resulted from an attempt to discipline E, which escalated when E hit him in the eye. Based on his actions toward E, defendant subsequently was charged with felony fourth-degree assault (because of the presence of E's younger siblings) and harassment.

Trial was scheduled for 9:30 a.m. on June 12, 2013. Shortly after 10:00 a.m., on the morning set for trial, the court invited the parties to address the admissibility of a recording of the 9-1-1 call, because it was apparent that E, although subpoenaed by the state as a witness, was not planning to show up. The parties then addressed the two requirements under Article I, section 11, for admitting out-of-court statements from a declarant who will not be testifying at trial: (1) the "unavailability" of the declarant and (2) the reliability of the declarant's statements.

The prosecutor argued that both requirements were satisfied. As for the latter requirement, reliability, the prosecutor argued that the statements in the 9-1-1 call were excited utterances. *See State v. Camarena,* 344 Or 28, 36, 176 P3d 380 (2008) (approving this court's conclusion that the complainant's statements to the 9-1-1 operator were reliable as "excited utterances," a firmly rooted hearsay exception under Oregon law). With regard to unavailability, the prosecutor first described the efforts that the state made to procure E's testimony. *See State v. Nielsen,* 316 Or 611, 623, 853 P2d 256 (1993) (a declarant is "unavailable" when the state makes a good-faith effort to obtain the witness's testimony but is unable to do so). The prosecutor stated:

> "First, the State has subpoenaed [E] who is the named victim in this case. She—we have a return of service on her. We have been trying to call her to have her appear and reach her.
>
> "This morning I spoke with her mother, [N]. She confirmed that she had been served with a subpoena but was not going to come to trial."

Later in the hearing, the trial court inquired further about the unavailability prong of the test, explaining that *Camarena* did not address "whether the mere fact of not showing up for a subpoena satisfied the State's obligation." The prosecutor replied:

> "I know we have to make that showing * * *. And I think when the State subpoenaed a witness, that we have attempted to call her, we can't reach her. I spoke to her mother this morning in order to confirm whether she was coming or not.
>
> "It is not—I think where the line comes in is where there is no efforts made, we are just going to not bother to try to get the witness here that that becomes an issue. But that was not the State's intent. The State's intent—it would be easier to have a witness here. We wouldn't have to be having this argument about what comes in and what doesn't if she were here. And we made the efforts to get her here. We did serve her. She is * * * refusing to appear."

Defense counsel, meanwhile, argued that the state had made only "minimal" efforts to secure E's attendance.

Counsel contended, "I haven't heard that they don't know where she is. She has been under subpoena and I think that the effort has been minimal at this point, basically no effort finding out that she doesn't want to come in." Defense counsel further argued that "the State has the authority to ask you to bring her in as a material witness. Even apart from that, the Sheriff or police officers could be sent out to have her available."

The court then went off the record and reviewed relevant case law. When the court went back on the record, it asked the parties to clarify some of the underlying facts—particularly, the time that the state learned that E was not going to appear. The prosecutor stated that he learned "this morning" that E was not going to appear; he stated that "[w]e tried all of the numbers that we had that did not operate anymore for her and then—." At that point, defense counsel interrupted to point out a factual discrepancy. Defense counsel stated:

"I just want to interject so you have the full record. According to what I have learned [E] was at the DA's Office sometime earlier and indicated that she wouldn't appear and didn't want to testify. And then this morning before [the prosecutor] had even identified who [E's mother] was, indicated to me that he might not have [E] available."

The court pointed out "some disagreement as to that clarification" and asked the prosecutor whether E "appear[ed] at your office or contact[ed] your office." The prosecutor answered:

"The last time [E] was at our office was at Grand Jury, that I know of which was almost a year ago. There had been subsequent mail or I think phone contact. Then the phone number stopped working and we have not heard from her. Because we haven't heard from her and because of, you know, the whole nature of this case where it is clear that—but [E's mother]—that [E] are not cooperative with the prosecution of this case. Yeah, there was a thought that she thought she may not show up. So that is what I related to [defense counsel].

"And spoke with—then I went out and spoke with her mother, [N], and asked if she was coming. She said no, she

is not coming. She had gotten her subpoena. She confirmed that she got her subpoena but she was refusing to come."[1]

The trial court observed that Oregon appellate cases had not squarely addressed whether "merely serving the subpoena is a reasonable effort on the part of the State." The court then stated that, "[i]f this person is known to be local, if she is still—I don't know if I can say presumably, but the circumstances were that she was living with her mother as a family, it is reason to believe that she still lives under those circumstances, whether the state ought to be asking for the Court's assistance in procuring her attendance or not."

The prosecutor, in response, again argued that "service is enough" and suggested that "the more likely scenario is that they figured if they didn't show up then we wouldn't have a case and then it would be dismissed, rather than it is the State not trying to have them here." The court clarified that it was not suggesting that the state was "trying not to have them here," but rather was trying to resolve defense counsel's contentions regarding whether a material witness order, or sheriff being sent to compel her attendance, or something "along those lines is required" to show unavailability. The court explained that "[t]hose are remedies that are available. I understand * * * why that is not necessarily desirable, but certainly in an allegation of domestic violence I can see why the state might choose not to do so." The court further acknowledged that the state might not want to take measures beyond subpoena in the case of a juvenile but explained that the question was complicated by the constitutional requirement of confrontation. The court then proposed the following approach to protect defendant's confrontation rights:

> "One way of looking at this is that we now have a bench trial. We have two days set for trial. If all that has happened so far is a follow up phone call we could set this to begin tomorrow at the same time or perhaps at 9:00 o'clock and allow the State to do whatever further—make whatever further efforts it wishes to make at this time whether

---

[1] The prosecutor also confirmed that he had received a return of service for the subpoena.

through officers that are on the case or otherwise. And then we could take it up tomorrow morning.

"It feels to me like there is a little bit more—and I am not official formally ruling on that, but it seems to me that there might be a little more that could be done to ensure that [defendant's] Constitutional rights are protected that won't interfere with the operation of this—completion of this trial under the circumstances. So I would give the State that opportunity to do so.

"Is there any reason that—it seems like this would be a fairly brief trial since it is a bench trial. In any event, we could complete it in one day if we started at 9:00 o'clock tomorrow?"

The prosecutor responded, "I think we could." The court then asked whether there was "[a]ny objection from [the] other side to proceeding that way rather than formally ruling on the objection to the 911 tape?" Defendant objected to delaying the ruling:

"I will have to object to the Court allowing the State to fix what it is obviously a deficient effort to get [E] here. We set this hearing to discuss the current state of the evidence and how the cases apply. And then once it is determined how those cases apply, the Court is giving the State additional time to cure.

"I would object. I think the motion hearing was intended to resolve the issue based on the facts known at the time. And so I object to a continuance, Your Honor."

In light of defendant's objection to a continuance, the court ruled at that time on whether the state's efforts were reasonable:

"Given that, [defense counsel], based upon the information that the State had prior to today's date, the fact that they had a return of service that [E] had been served with subpoena, without specific reason to know that she would not comply with that such that they need to take additional steps beforehand, the guidance [inaudible] available from the Court of Appeals on this issue is that the State has made a reasonable effort to procure her attendance. She has not attended and so is not available."

The court further ruled that the statements were reliable and that it would admit the 9-1-1 recording.

As contemplated by that pretrial ruling, the state offered, and the court admitted, the 9-1-1 recording as evidence during the bench trial. The court found defendant not guilty of the charged felony fourth-degree assault and harassment but found him guilty of the lesser-included offense of attempted misdemeanor fourth-degree assault.

## ANALYSIS

On appeal, defendant assigns error to the trial court's admission of the 9-1-1 recording, arguing that the court's ruling violated his state constitutional right to confront his accuser, E. *See* Or Const, Art I, § 11 ("In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face."). In light of Article I, section 11, "out-of-court statements made by a declarant who does not testify at trial are, as a general rule, admissible only if (1) the declarant is unavailable and (2) the statements have adequate indicia of reliability." *State v. Supanchick*, 354 Or 737, 753, 323 P3d 231 (2014).

In this case, defendant's arguments on appeal concern only the first of those two prongs, the question of unavailability. The Oregon Supreme Court has adopted "the reasoning of the Supreme Court of the United States [stated in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980)] to determine 'what constitutes unavailability of a hearsay declarant * * * to satisfy our state constitutional confrontation clause.'" *State v. Stevens*, 311 Or 119, 140, 806 P2d 92 (1991) (quoting *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985)). Under that test, the prosecution, as the proponent of the out-of-court statement, must show that it "made a good-faith effort to obtain [the declarant's] testimony, but was unable to do so." *Nielson*, 316 Or at 623; *State v. Starr*, 269 Or App 97, 103, 344 P3d 100, *rev den*, 357 Or 415 (2015) ("The state bears the burden of proof, as the proponent of the evidence, that the witness was unavailable."). "The degree of effort which constitutes due diligence in attempting to secure an unavailable witness depends upon the particular circumstances presented by each case." *State v. Anderson*, 42 Or App 29, 32, 599 P2d 1225, *rev den*, 288 Or 1 (1979), *cert den*, 446 US 920 (1980). Thus, "[w]e look to all of the circumstances shown in the record regarding the

state's efforts to procure the victim's testimony." *Starr*, 269 Or App at 103.

In this case, the parties focus most of their attention on one particular aspect of the state's efforts: the successful service of a subpoena. Defendant acknowledges that we have previously accepted a concession that a declarant who "failed to appear pursuant to a subpoena" was unavailable. *See State v. Wilcox*, 180 Or App 557, 564, 43 P3d 1182, *rev den*, 334 Or 632 (2002) (summarily stating, "Here, however, the trial court found that the victim was unavailable, because she failed to appear pursuant to a subpoena. On appeal, defendant concedes that the victim was unavailable, and we accept that concession."). Nonetheless, he argues that "[t]his court should hold that more is required." According to defendant:

> "When a witness declines to appear despite having been validly subpoenaed, the state has many options to compel that witness to testify, ranging from persuasion to invoking the trial court's contempt power. If the state declines to pursue any of those options, and the record does not reflect that further efforts would have been futile, then the state has failed to show a good-faith effort."

The state responds that *Wilcox* is consistent with the general rule that this court should adopt: "This court should hold that subpoenaing a witness will, in all but exceptional cases, constitute a good-faith effort to secure her for trial."

In our view, defendant's position is more consonant with the protections enshrined in Article I, section 11. Although frequently phrased in terms of whether the state made a good-faith effort to secure the witness's attendance, the test for unavailability is, ultimately, one of *necessity*. As the court pointed out in *State v. Moore*, 334 Or 328, 339-40, 49 P3d 785 (2002), the unavailability requirement "flows logically" from those cases in which courts allowed the use of out-of-court statements in "'circumstances of genuine necessity'"—that is, cases in which "confrontation, in the classic sense, was impossible." (Quoting *State v. Smyth*, 286 Or 293, 300, 593 P2d 1166 (1979).); *State v. Herrera*, 286 Or 349, 355, 594 P2d 823 (1979) ("Before a prosecutor can use prior recorded testimony and thus deprive a defendant of his

right at trial to confront his accusers face to face, he must first show the trial court that use of the former testimony is a genuine necessity.").

Our decision in *State v. Jackson*, 187 Or App 679, 683-84, 69 P3d 722 (2003), provides a helpful summary of the principles animating the unavailability requirement:

> "The meaning of 'unavailability' is clarified by reference to the underlying purpose of confrontation, which is 'to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence * * *.' *Roberts*, 448 US at 65. * * *

> "* * * The unavailability requirement effectuates the preference for face-to-face confrontation by 'establish[ing] a rule of necessity.' *Roberts*, 448 US at 65. To satisfy that rule, 'the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' *Id.* The rule of necessity applies to Article I, section 11; the state must either furnish face-to-face confrontation or show that doing so is impossible. *Moore*, 334 Or at 339."

*See also id.* at 685 ("Because courts excuse the absence of confrontation only in the face of 'genuine necessity,' when the state can produce the declarant as a witness, it must do so." (Quoting *Moore*, 334 Or at 340.)).

Viewed in that light, the mere fact that E was subpoenaed but did not show up on the morning of trial, is legally insufficient to establish the type of "genuine necessity" that demonstrates unavailability for purposes of Article I, section 11. As defendant points out, this is not a case in which the record showed that the witness was beyond the court's jurisdiction or could not have been located through good-faith efforts by the state; indeed, the state was able to locate her for service of the subpoena, and the trial court noted that there "was reason to believe" that she was still living with her family. Nor was this a case in which the state's previous efforts to locate E give rise to any reasonable inference that further efforts to compel her attendance would have been futile. Leading up to trial, the state made only minimal efforts—trying nonworking phone numbers—to contact E, one of its most important witnesses, notwithstanding the

prosecutor's knowledge that E was a reluctant witness. *See Brooks v. United States*, 39 A3d 873, 886 (DC Ct App 2012) ("[A] witness's known reluctance to testify adds to the government's burden to show that it made 'reasonable, good faith efforts' to secure her appearance because it makes her failure to appear voluntarily all the more foreseeable.").[2]

Instead, this is a case in which, *after* E did not show up pursuant to the subpoena, the state made *no* further effort to locate her or to compel her attendance at trial, content to rely on the 9-1-1 call. *See United States v. Mann*, 590 F2d 361, 367 (1st Cir 1978) ("The government did not make as vigorous an attempt to secure the presence of the witness as it would have made if it did not have the prior recorded testimony. The language of [FRE] 804(a)(5) suggests that 'other reasonable means' besides subpoenas must be tried before a witness can be found unavailable. This relatively high good faith standard cannot be satisfied by perfunctory efforts, if the rule is not to sanction the government's procuring depositions of witnesses, especially shaky witnesses, but then discourage attempts to bring the witness to trial so long as the government is satisfied with what is in the transcript." (Footnotes omitted.)). That is, the state did not attempt to locate E through her mother, who was present at the courthouse, or through other relatives or law enforcement; it did not send or even propose to send law enforcement to get her; nor did the state invoke the court's contempt power or seek a material witness order to ensure E's attendance once she failed to show up on the morning of trial[3]; and, although the prosecutor was perhaps amenable

---

[2] We draw on the reasoning of courts in other jurisdictions under the federal constitution and analogous standard under the federal evidence rules because, as the trial court correctly observed, Oregon appellate courts have provided little guidance on whether the mere service of a subpoena satisfies the state's obligation to make a good-faith effort for purposes of establishing unavailability. In most Oregon appellate cases, the state has been unable to successfully serve the witness with the subpoena, and the issue has been whether the state's efforts to serve the witness were sufficient to establish unavailability. *E.g., Starr*, 269 Or App 97; *State v. Simmons*, 241 Or App 439, 250 P3d 431 (2011); *State v. Lucas*, 213 Or App 277, 160 P3d 1012 (2007); *Anderson*, 42 Or App 29.

[3] We need not specifically address whether, to show unavailability, the state would have been required bring a contempt action against E or seek a material witness order in the event that further efforts to contact her and persuade her to testify were unsuccessful; as noted, the state made *no* further effort to secure E's

to a continuance to make further efforts to procure E's testimony, he did not request a continuance for that purpose.[4] *See U. S. v. Lynch*, 499 F2d 1011, 1023 (1974) (holding that the government had failed to establish that its witness was unavailable, notwithstanding successful service of the subpoena; "[a]t least where the evidence indicates that a crucial government witness, who is physically and mentally capable of testifying, is within the jurisdiction of the court, the prosecution must demonstrate that it has been unable to obtain the witness' presence through a search exercised both in good faith and with reasonable diligence and care"); *see also Mann*, 590 F2d at 367 (the government must make more than "perfunctory efforts").

In short, contrary to the state's suggestion, its obligation to make a good-faith effort did not end with its successful service of the subpoena on a reluctant witness. Rather, on this record, we agree with the trial court's initial observation that more could have been done to protect defendant's confrontation rights. The state's effort, as of the time of the motion *in limine*, was legally insufficient to establish that E was "unavailable" for purposes of Article I, section 11, and the trial court therefore erred in admitting the 9-1-1 tape recording. Furthermore, because the tape recording was an important part of the state's case, particularly regarding defendant's mental state, the error was prejudicial. Accordingly, we reverse and remand.

Reversed and remanded.

---

attendance after she failed to appear pursuant to the subpoena, let alone initiate contempt or material witness proceedings.

[4] As set out above, the trial court, not the state, proposed a continuance. When defendant objected to giving the state additional time to "cure" its deficient effort, the prosecutor fell back on his argument that the subpoena was sufficient to demonstrate unavailability, and the court decided the question of unavailability based on the record before it.