No. 55            October 19, 2017            55

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

KENNETH JAMES HARRIS,
aka Kenneth James Harris-Maynard,
aka Kenneth James Maynard,
*Respondent on Review.*

(CC 12FE0978; CA A154977; SC S064377)

On review from the Court of Appeals.*

Argued and submitted May 9, 2017.

Gregory A. Rios, Assistant Attorney General, Salem, argued the cause for petitioner on review. Jennifer S. Lloyd, Assistant Attorney General, filed the brief, joined by Gregory A. Rios. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

John Evans, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Margaret Garvin, Portland, filed the brief for *amicus curiae* National Crime Victim Law Institute at Lewis & Clark Law School. Also on the brief was Rebecca S.T. Khalil.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, and Nakamoto, Justices, and Baldwin, Senior Justice pro tempore.

LANDAU, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

* On appeal from Deschutes County Circuit Court, Alta J. Brady, Judge. 279 Or App 446, 379 P3d 539 (2016).

** Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn and Duncan, JJ., did not participate in the consideration or decision of this case.

**LANDAU, J.**

Article I, section 11, of the Oregon Constitution provides a criminal defendant the right "to meet the witnesses face to face." That right of confrontation is not absolute, though. If the state shows that a witness is "unavailable," it may offer reliable hearsay evidence without presenting a live witness at trial. The issue in this case is what is required to establish that a witness is "unavailable."

In this case, the state issued a subpoena for a witness against defendant, and the witness did not appear for trial. The state then offered hearsay evidence in lieu of live testimony, arguing that the witness's failure to appear in response to the subpoena sufficed to establish her unavailability. Defendant argued that a witness is unavailable for confrontation purposes only when the state has exhausted all reasonable means of securing the appearance of the witness. Once the state became aware that its witness would not appear, he argued, it could have taken any number of additional actions to secure her appearance, but did not do so. The trial court offered to continue the trial to allow the state to take such additional steps, but defendant objected. The trial court then concluded that the state had made reasonable efforts to produce the witness and admitted the hearsay.

The Court of Appeals reversed, holding that "more could have been done" to produce the witness at trial. *State v. Harris*, 279 Or App 446, 457, 379 P3d 539 (2016). We conclude that, to establish unavailability for Article I, section 11, purposes, the state must show that it is unable to produce a witness after exhausting reasonable means of doing so. In most cases, the state will not be allowed simply to rely on a subpoena. In this case, however, defendant objected to a continuance that would have enabled the state to pursue other means of securing its witness. Under the circumstances, defendant cannot be heard now to complain that the state did not exhaust those measures. We therefore reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

The relevant facts are not in dispute. Police received a 9-1-1 call from a minor victim. The victim told

the dispatcher that she was hiding in the bathroom from her mother's boyfriend, defendant, who had struck her with a belt and was outside the door fighting with her mother in front of her younger siblings. Police arrived and found the victim "hysterical" in the street outside the house. Defendant claimed that he had attempted to discipline the victim. The victim testified to a grand jury, and defendant was charged with felony fourth-degree assault.

The state subpoenaed the victim to appear as a witness at trial. The record does not include the subpoena or the return of service, and it does not show the precise date that the subpoena was issued. On the morning of trial, the prosecutor learned that the victim was not going to appear. In lieu of her testimony, the state offered a recording of the 9-1-1 call, arguing that the recording was admissible under the excited-utterance exception to the rule against hearsay.

The trial court held a hearing on the admissibility of the recording, focusing on defendant's Article I, section 11, right to confront witnesses face-to-face. The prosecutor argued that hearsay testimony is admissible notwithstanding confrontation rights if the declarant is unavailable and the statements are reliable. The prosecutor asserted that there was no dispute as to the reliability of the recording of the victim's 9-1-1 report, and her failure to appear in response to the subpoena established her unavailability. He explained that "the State has subpoenaed [the victim] ***. [W]e have a return of service on her. We have been trying to call her to have her appear and reach her."

The trial court asked the prosecutor whether "the mere fact of not showing up for a subpoena" satisfied the state's obligation to show that a witness is unavailable. The prosecutor responded:

"I know we have to make that showing ***. And I think when the State subpoenaed a witness, that we have attempted to call her, we can't reach her. I spoke to her mother this morning in order to confirm whether she was coming or not.

"*** I think where the line comes in is where there is no effort made, we are just going to not bother to try to get the witness here that that becomes an issue. But that was not

the state's intent. * * * [I]t would have been easier to have a witness here. We wouldn't have to be having this argument about what comes in and what doesn't if she were here. And we made the efforts to get her here. We did serve her. * * * [S]he is refusing to appear."

Defendant did not dispute the reliability of the 9-1-1 recording, but did contest that the state established that the witness was unavailable. According to defendant, "the effort has been minimal at this point, basically no effort finding out that she doesn't want to come in." Defendant argued that the state could ask the court to order her to appear as a material witness. Apart from that, he argued, "the Sheriff or police officers could be sent out to have her available."

The court noted that it understood why the state might be hesitant to take those actions in a domestic violence case and proposed the following solution:

"[W]e could set this to begin tomorrow * * * and allow the state to do whatever further—make whatever further efforts it wishes to make at this time whether through officers that are on the case or otherwise. And then we could take it up tomorrow morning.

"It feels to me like there is a little bit more—and I am not * * * formally ruling on that, but it seems to me that there might be a little more that could be done to ensure that [defendant's] Constitutional rights are protected that won't interfere with the operation of this—completion of this trial under the circumstances. So I would give the state that opportunity to do so."

The prosecutor agreed to that plan. But defendant objected to allowing the state further time to secure the witness's presence, arguing that the court had to decide whether the state had satisfied the legal standard for unavailability based on the state's pretrial efforts to secure her attendance. Given defendant's objection to the continuance, the court instead ruled that,

"based upon the information that the State had prior to today's date, the fact that they had a return of service that [the witness] had been served with a subpoena, without specific reason to know that she would not comply with that such that they need to take additional steps beforehand, the guidance * * * available from the Court of Appeals on

this issue is that the State has made a reasonable effort to procure her attendance. She has not attended and so is not available."

The court further ruled that the statements were reliable as excited utterances and admitted the 9-1-1 recording.[1] The court found defendant guilty of the lesser-included offense of attempted misdemeanor fourth-degree assault.

Defendant appealed to the Court of Appeals, assigning error to the trial court's decision to admit the 9-1-1 recording. He argued that the court incorrectly determined that the state had made an adequate effort to secure the witness to establish her unavailability for Article I, section 11, purposes. The state reprised its argument that service of a subpoena alone was a sufficient effort to secure witness testimony.

The Court of Appeals agreed with defendant. The court explained that "the test for unavailability is, ultimately, one of *necessity*," and the state failed to satisfy that test. *Harris*, 279 Or App at 454 (emphasis in original). In the view of the Court of Appeals, the state's effort to locate the witness was minimal:

"[T]he state did not attempt to locate [the witness] through her mother, who was present at the courthouse, or through other relatives or law enforcement; it did not send or even propose to send law enforcement to get her; nor did the state invoke the court's contempt power or seek a material witness order to ensure [the victim's] attendance once she failed to show up on the morning of trial; and, although the prosecutor was perhaps amenable to a continuance to make further efforts to procure [the witness's] testimony, he did not request a continuance for that purpose."

*Id.* at 456-57. The court noted that the state had agreed to a continuance to pursue other means of producing the witness, but concluded that that was of no significance because the state had not *moved* for a continuance. *Id.* at 457 n 4.

---

[1] OEC 803(2) states an exception to the rule against the admission of hearsay evidence that applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See generally State v. Longo*, 341 Or 580, 601-02, 148 P3d 892 (2006) (applying rule).

Because the court determined that the state had failed to make a reasonable good-faith effort to secure the witness's presence at trial, the Court of Appeals reversed and remanded.

Before this court, the state argues that the Court of Appeals erred in requiring more than a showing that it served a witness with an enforceable subpoena to establish the witness's unavailability. In the state's view, the court placed too much emphasis on references in this court's precedents to a requirement that the proponent of the admission of hearsay over confrontation objections must prove the "necessity" of relying on hearsay. According to the state, Article I, section 11, requires only that the state demonstrate "reasonable, good-faith efforts to obtain in-person trial testimony from a hearsay declarant" and that it satisfies that obligation "when it shows that it has served her with a valid subpoena requiring her to appear at trial, but she nonetheless fails to appear."

Defendant responds that the state satisfies its obligation to establish the unavailability of a witness only when it shows that it has "exhaust[ed] every reasonable means of securing the witness's appearance." In this case, defendant argues, "[t]he state had reasonable and readily available methods for securing [the witness's] attendance that it never tried." Among other things, defendant suggests that the state "could have sent someone to her house to persuade her to attend and to offer her a ride to the courthouse." Defendant adds that the prosecutor also could have "asked the court to set over the trial so that remedial-contempt proceedings could be initiated."

Under Article I, section 11, of the Oregon Constitution, a defendant has the right "to meet the witnesses face to face" in all criminal prosecutions. The constitution states the right in absolute, unqualified terms. Yet this court has never interpreted it literally. To the contrary, the court has concluded that Article I, section 11, must be construed in light of certain well-established exceptions that existed at common law. *State v. Copeland*, 353 Or 816, 822, 306 P3d 610 (2013). Among those well-established exceptions is one that permits the use of prior out-of-court statements

that are "necessary" because of the "unavailability" of the declarant. In *State ex rel. Gladden v. Lonergan*, 201 Or 163, 269 P2d 491 (1954), for example, the court held that the confrontation guarantee of Article I, section 11, did not foreclose the admission of depositions and former testimony if the declarant was unavailable. The court did not precisely define what must be shown to establish the unavailability of a witness. It did, however, emphasize that the issue is controlled by "the simple principle of *necessity—i.e.*, the absence of any other means of utilizing the witness' knowledge." *Id.* at 182 (quoting 5 John Henry Wigmore, *A Treatise on the Anglo-American System of Evidence* § 1402 (3d ed 1940) (emphasis in original)).[2] Thus, at least under *Lonergan*, it was not enough for the state to show that it had attempted unsuccessfully to produce a witness by a reasonable means. Rather, the court required that the court exhaust all reasonable means.

In *State v. Herrera*, 286 Or 349, 594 P2d 823 (1979), the court reaffirmed the validity of an unavailability exception to the confrontation guarantee. But it cautioned that the exception applies only "when a witness is truly unavailable to testify at trial." *Id.* at 355. Because of the defendant's "strong interest" in being able to confront witnesses, the court said, "this exception cannot be granted routinely." *Id.* Before the state can rely on prior out-of-court statements, it must demonstrate why the use of such evidence is "genuinely necessary." *Id.*

The manner in which the court applied those principles in *Herrera* illustrates the demanding nature of the showing required of the proponent of the out-of-court statements. In *Herrera*, the state argued that its witness was unavailable because he had invoked the privilege against self-incrimination. *Id.* at 355-56. The court concluded that the simple fact that the witness had invoked the privilege

---

[2] The section of Wigmore that the court cited went on to say that the rule at common law required unavailability "by any means whatever," but noted that it was not clear whether, in practice, all courts consistently followed that rule. *Id.* Wigmore cited, among other things, Simon Greenleaf's nineteenth-century treatise on evidence for the proposition that, to prove unavailability, the proponent of hearsay evidence must show that it had "irrecoverably lost the power of producing the witness." *Id.* (quoting Simon Greenleaf, *A Treatise on the Law of Evidence* § 168 (1842)).

was insufficient to show that he was unavailable. The court noted that the witness had invoked the privilege because he had been promised immunity and that, under those circumstances, the state had available to it statutory means of nevertheless compelling the witness's testimony. *Id.* at 357. To establish unavailability for confrontation purposes, the court explained, "at the minimum the state must show \*\*\* why it does not wish to avail itself of statutes which can compel his testimony at the trial." *Id.* at 356. In other words, to establish unavailability, the state was required to explain why it had not followed reasonable means of compelling the testimony.

The court in *Herrera* cited as authority for its constitutional analysis the United States Supreme Court's decision in *Barber v. Page*, 390 US 719, 88 S Ct 1318, 20 L Ed 2d 255 (1968), which construed the parallel confrontation guarantee of the Sixth Amendment to the United States Constitution.[3] In that case, the state sought to introduce a transcript of a preliminary hearing in lieu of the live testimony of a witness who was then incarcerated in another state. The state argued that the transcript was admissible because the witness was outside the jurisdiction. The Supreme Court rejected the argument, explaining that the confrontation guarantee allowed such out-of-court testimony in cases of "necessity." *Id.* at 722. Because the state had not explained why it had not pursued existing statutory means of obtaining the witness in spite of his location, the Court said, the state had not demonstrated the necessity of admitting the hearsay. *Id.* at 722-24.

This court again relied on federal precedents to interpret and apply the confrontation guarantee of Article I, section 11, in *State v. Campbell*, 299 Or 633, 651, 705 P2d 694 (1985). At issue was the admissibility of the hearsay testimony of a mother as to her child's statements. The state argued that the testimony was admissible because the child, then three years of age, was not competent to testify. Addressing the question whether admission of that hearsay evidence violated the defendant's Article I, section

---

[3] The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."

11, confrontation rights, this court expressly adopted the reasoning of the United States Supreme Court in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), *overruled by Crawford v. Washington*, 541 US 36, 43-50, 124 S Ct 1354, 158 L Ed 2d 177 (2004).

In *Roberts*, the Supreme Court had articulated a two-part test for the admissibility of hearsay testimony over confrontation-rights objections: First, the declarant must be unavailable. Second, if the declarant is unavailable, the declarant's out-of-court's statements must have "adequate indicia of reliability." *Roberts*, 448 US at 66. Quoting its earlier opinion in *Barber*, the Court explained that a witness is not unavailable, for confrontation purposes, "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Roberts,* 448 US at 74. The Court commented that, although "[t]he law does not require the doing of a futile act," the prosecutor must exhaust reasonable measures for obtaining the witness: "[I]f there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation." *Id*. (emphasis in original). Ultimately, the Court said, the extent of the prosecutor's obligation to procure the witness is a question of reasonableness. *Id*

Applying those principles in *Campbell*, this court concluded that the state had failed to make a record establishing the incompetency of the child victim to testify. Accordingly, it reversed and remanded for the trial court to make that determination. 299 Or at 652.

To be sure, in later cases, the Supreme Court first qualified and then overruled its decision in *Roberts*. *See United States v. Inadi*, 475 US 387, 392-94, 106 S Ct 1121, 89 L Ed 2d 390 (1986) (unavailability not required to admit hearsay testimony of coconspirator); *White v. Illinois*, 502 US 346, 353-56, 112 S Ct 736, 116 L Ed 2d 848 (1992) (unavailability not required to admit spontaneous declarations); *Crawford*, 541 US at 43-65 (overruling *Roberts*). Nevertheless, this court continues to adhere to the *Roberts* analysis in interpreting and applying the confrontation guarantee of Article I, section 11.

Of particular significance for our purposes is this court's opinion in *State v. Moore*, 334 Or 328, 49 P3d 785 (2002). In that case, the state argued that, in light of the federal case law after *Roberts*, this court should reconsider its adherence to *Roberts*. This court declined to do so. After considering the text of Article I, section 11, the provision's historical purposes, and the prior case law construing it, the court decided to maintain the *Roberts* requirements of unavailability and reliability. *Moore,* 334 Or at 339-40. Citing *Lonergan*, the court emphasized that its prior cases adhered to a demanding requirement of unavailability: "*only* when confrontation, in the classic sense was impossible," the court observed, was hearsay admitted over confrontation objections. *Id.* at 339 (emphasis in original). That case law, the court said, "continued to focus on necessity as the justification for admitting hearsay against a criminal defendant, once confrontation became impossible." *Id.*

This court has reaffirmed *Campbell* and *Moore* in a number of subsequent decisions. In *State v. Birchfield*, 342 Or 624, 629, 157 P3d 216 (2007), the court noted *Moore*'s express adherence to the two-part test of *Roberts* and, in particular, on the unavailability requirement. Indeed, it emphasized *Moore*'s insistence that "the focus when considering the strictures of the Oregon Constitution had been and would continue to be on 'necessity as the justification for admitting hearsay against a criminal defendant, once confrontation became impossible.'" *Birchfield*, 342 Or at 629-30 (quoting *Moore*, 334 Or at 339). More recently, in *Copeland*, 353 Or at 826, the court reaffirmed *Campbell* and *Moore*. The court noted that the latter decision had "referred to the unavailability requirement in sweeping terms." *Id.* But it did nothing to qualify that requirement.

As did the court in *Copeland*, we acknowledge that there is phrasing in *Moore* that is indeed sweeping. The court there referred to "necessity as the justification for admitting hearsay against a criminal defendant, once confrontation became impossible." *Moore*, 334 Or at 339. The reference to impossibility must be taken in the light of the Supreme Court's qualification in *Roberts* that, of course, the law does not require the state to engage in futile measures. *Roberts*, 448 US at 74.

That said, in light of the foregoing case law, the state's contention that Article I, section 11, requires only that it have subpoenaed a witness is untenable. The constitutional confrontation guarantee requires the state to do more than select one from any number of reasonable means of securing the presence of a witness and call it a day. Reliance on hearsay in lieu of live testimony must be a matter of "necessity." The state must have exhausted all reasonably available means of producing the witness.

In that regard, we have found a notable lack of support in the case law of this state or others for the view that the state proposes in this case, *viz.*, that unavailability may be established simply by showing that a witness did not comply with a subpoena. *See, e.g.*, *State v. Beyer*, 72 Haw 469, 473, 822 P2d 519 (1991) ("Mere service of a subpoena on the complaining witness did not establish her unavailability."), *overruled on other grounds by State v. Moore*, 82 Haw 202, 921 P2d 122 (1996); *State v. Rivera*, 51 Wash App 556, 561, 754 P2d 701 (1988) ("The State cannot claim good faith solely on the issuance of the subpoena."); *Bentley v. State*, 706 P2d 1193, 1197 (Alaska Ct App 1985). *But see State v. Trice*, 292 Neb 482, 490, 874 NW2d 286 (2016) ("[S]erving a witness with a subpoena to testify ordinarily constitutes a sufficient good faith effort to procure the witness' attendance at trial.").

It is undisputed that the state could have pursued other measures to produce the victim in this case. We need not decide, however, whether the state reasonably should have pursued those other measures. In this case, the state agreed to a continuance to permit it to make further attempts to secure its witness. But defendant objected to any such continuance. Defendant does not explain, and we do not understand, how the state can be faulted for failing to obtain a continuance to pursue other means of producing the witness when defendant objected to the state being allowed to do just that. The Court of Appeals found it significant that the state did not request a continuance. *Harris*, 279 Or App at 457 n 4. But, given that the trial court had said that it would allow the state additional time to secure the witness, a specific request for the court to do that was not necessary.

By objecting to the state being allowed to take further measures to produce its witness, defendant essentially invited any error that may have resulted. As this court has long held, invited error is no basis for reversal. *See, e.g.*, *State v. Koennecke*, 274 Or 169, 173-74, 545 P2d 127 (1976) (state, having invited error by asking the trial judge to enter an order, could not appeal that order); *Valdin v. Holteen and Nordstrom*, 199 Or 134, 152, 260 P2d 504 (1953) ("[D]efendant objected, and, because of his objection, the proper procedure was not followed. *** Defendant invited this error and is in no position to complain thereof."); *State v. Weitzel*, 157 Or 334, 344, 69 P2d 958 (1937) ("It will not do for counsel to invite error and then complain about it.").

In sum, we reject the state's contention that the unavailability requirement of Article I, section 11, is satisfied when a witness fails to comply with a subpoena. The state must exhaust reasonably available measures for producing the witness. In so holding, however, we reiterate that the rule is one of reasonableness under the circumstances of the individual case.

In this case, defendant objected to the state being granted the time to pursue other means of producing the victim as a witness. Under those circumstances, defendant is in no position to complain that the trial court erred in concluding that the victim was unavailable for confrontation purposes and in admitting the 9-1-1 recording of her report.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.